**Mario Ramos VARGAS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–91–00426–CR.

Court of Appeals of Texas,
El Paso.

March 31, 1993.

---

Gary Hill, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

### OPINION

LARSEN, Justice.

This appeal involves the legality of a warrantless search conducted at a permanent U.S. Border Patrol checkpoint. Appellant/defendant Mario Ramos Vargas, Jr. (Vargas) challenges the trial court's refusal to suppress 188 pounds of marijuana seized as fruit of a warrantless search of his vehicle at the checkpoint. After the trial court denied his motion to suppress, Vargas elected a bench trial. The trial court found him guilty and assessed punishment at 10 years' imprisonment. We affirm.

### STANDARD OF REVIEW

■ The trial judge is the sole trier of facts on a motion to suppress. *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App.1990). As a reviewing court, we do not perform our own factual review, but simply decide whether the trial court's findings are supported by the record; if so, we do not disturb the trial court's factual determinations, but we do address the question of whether the trial court improperly applied the law to the facts. *Self v. State*, 709 S.W.2d 662 (Tex.Crim.App.1986).

If the trial court's decision is correct on any applicable theory of law, we must sustain it. *Romero*, 800 S.W.2d at 543; *Spann v. State*, 448 S.W.2d 128 (Tex.Crim. App.1969). This is true even where the trial court gives the wrong reason for its decision. *Romero*, 800 S.W.2d at 543; *Salas v. State*, 629 S.W.2d 796 (Tex.App.— Houston [14th Dist.] 1981, no pet.).

### THE CHECKPOINT

The Sierra Blanca checkpoint, a permanent installation of the U.S. Border Patrol, is located on Interstate Highway 10 about 85 miles southeast of El Paso in Hudspeth County, Texas. There, the government conducts routine vehicle stops aimed at stemming the flow of undocumented persons from Mexico into the United States. The Fifth Circuit Court of Appeals has held that this checkpoint is not the functional equivalent of the border. Any inquiry of a motorist or search of a vehicle beyond a few brief questions and a request for documents evidencing a motorist's legal right to be in the United States, therefore, must be based upon either consent or traditional concepts of probable cause. *United States v. Martinez–Fuerte*, 428 U.S. 543, 567, 96 S.Ct. 3074, 3087, 49 L.Ed.2d 1116 (1976); *United States v. Jackson*, 825 F.2d 853, 862–63 (5th Cir.1987). Vargas argues that the agents had neither probable cause nor consent, and the search violated his right to be free of unreasonable searches and seizures guaranteed by the Fourth Amendment to the U.S. Constitution.[1] We find that although there was no effective consent, the agents did have probable cause to conduct a warrantless automobile search.

### THE STOP AND SEARCH

In the early morning hours of July 27, 1989, Mario Ramos Vargas, Jr. stopped his tractor-trailer rig at the Sierra Blanca checkpoint. U.S. Border Patrol Agent Saul Hinojosa asked Vargas about his citizenship, then referred the truck, driver and passenger to a secondary inspection station. Hinojosa and a second Border Patrol Agent, James McLane, queried the driver and passenger about their citizenship. Vargas, the driver, claimed United States citizenship but could produce neither personal identification nor documents authorizing him to drive his commercial vehicle in interstate commerce. Hinojosa escorted Vargas into the checkpoint's office trailer. McLane then asked the truck's passenger,

---

1. Defendant does not argue that he was afforded any greater rights under the Tex. Const. art. I, § 9. We, therefore, do not reach the question of whether state constitutional guarantees differ from those under federal law here. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim. App.1991).

Serafin Montes Carbajal, some questions about his immigration status and his relation to Vargas. Montes produced immigration documents showing he was legally in the United States, and informed the agent he "worked for" Vargas. Agent McLane told the passenger he needed to look inside the truck, and Montes cooperated by opening the double doors to the trailer. McLane first inspected the truck's empty trailer, then entered the truck's cab, where he smelled the overpowering aroma of fresh marijuana. His further search revealed 188 pounds of marijuana and an undocumented Mexican woman in the cab's sleeper.

### CONSENT

■ Where the State relies upon consent[2] to justify a warrantless search, it bears the burden of proving by clear and convincing evidence that the consent was freely and voluntarily given, that it was given positively and unequivocally, and absent actual or implied coercion. *Lopez v. State*, 663 S.W.2d 587, 590 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). In determining the legality of consent, we consider many factors: whether the consent stemmed from a legal or illegal detention; whether the consent was volunteered rather than requested by the officer; whether the consenting party was made fully aware of his right to decline consent; and whether the consenting party was told any contraband found following consent might be used to convict him. *Brick v. State*, 738 S.W.2d 676, 680–81 (Tex.Crim.App.1987); *Viveros v. State*, 799 S.W.2d 458, 461 (Tex. App.—Corpus Christi 1990, pet. granted), *aff'd*, 828 S.W.2d 2 (Tex.Crim.App.1992). In addition, where the consent relied upon was given by someone other than defendant, the State must also prove that the third person giving consent possessed equal control over, or equal use of, the premises or thing searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Swinney v. State*, 529 S.W.2d 70, 71–2 (Tex.Crim.App.

1975); *McNairy v. State*, 777 S.W.2d 570, 573 (Tex.App.—Austin 1989, pet. granted), *aff'd*, 835 S.W.2d 101 (Tex.Crim.App.1991). If officers reasonably believed that the third party had common authority over the place to be searched, then their good faith mistake will not invalidate the search. This does not mean, however, that they may rely upon consent given in ambiguous circumstances or that clearly appears unreasonable. *McNairy*, 777 S.W.2d at 574.

■ Here, the evidence reveals consent to search was given only by the truck's passenger, Serafin Montes Carbajal. Border Patrol Agent McLane testified that upon request, Montes produced proof that he was a legal resident alien. McLane also stated he asked the passenger the same questions he had asked the driver, Vargas, about where the two were going and the purpose of their travel. McLane queried how long Montes had known Vargas, and whether Vargas was from Mexico. Montes replied that, so far as he knew, Vargas had been born in the United States. Montes said he worked for Vargas. McLane never asked if Montes had any ownership interest in or other connection with the truck beyond his employment by its driver. McLane never explained to the passenger his right to refuse consent to a search of the truck. McLane did not bother to obtain a written consent, although forms for that purpose are kept at the checkpoint. The agent's initial report nowhere reflects that he obtained oral consent to search from Montes. McLane simply said, "I need to look in the truck. Would it be all right? And he [Montes] said sure." Montes unlatched the trailer's double doors so Agent McLane could inspect inside. McLane found nothing in the trailer, and proceeded to the truck's cab, where he found a large load of marijuana and an undocumented Mexican woman.

The question of consent turns here, we believe, on whether Agent McLane had information from which he could reasonably

---

**2.** The State relies exclusively upon the consent theory in its brief on appeal. We, therefore, address that issue before reaching the other

theory advanced to justify the search and arrest at hearing, probable cause.

conclude that the truck's passenger, Montes, had common authority with Vargas sufficient that he could give effective consent for a search. We hold he did not. The only relevant fact McLane had when he began his search was Montes's statement that he "worked for" the driver. McLane did not ask for any details, he did not know whether Montes meant he was sharing driving responsibilities, whether he was navigator, or whether his work for Vargas was wholly unrelated to the trip and he was simply along for a ride. These are details McLane needed before he could reasonably assume Montes possessed common authority over the truck, allowing a passenger to give consent to a warrantless search. We hold, therefore, that McLane did not have valid third-party consent to conduct a warrantless search of the truck here.

### PROBABLE CAUSE

■ We next consider whether the border patrol agents had probable cause to conduct their search, and if they did, whether they could legally search the truck without a warrant. We begin by observing that a search governed by Fourth Amendment considerations occurred when Border Patrol Agent McLane entered Vargas's truck. See *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir.1992); *New York v. Class*, 475 U.S. 106, 114–15, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986). Because the agent was searching an automobile which could be moved, however, the Fourth Amendment allowed the agent to conduct a warrantless search if he had probable cause to believe that contraband or evidence of a crime was concealed in the vehicle. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We decide whether the agent possessed probable cause by determining whether, given all the known circumstances, a person of reasonable caution would be warranted in the belief that contraband or evidence might be found in the truck. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Amores v. State*, 816 S.W.2d 407

(Tex.Crim.App.1991). This exception to the warrant requirement is grounded in motorists' reduced expectation of privacy in their vehicles, together with a car's inherent mobility. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). We assess the permissible scope of a warrantless automobile search by examining the nature of contraband searched for and the places within the automobile where it would likely be found. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Osban v. State*, 726 S.W.2d 107 (Tex.Crim.App.1986). Thus, our task is to decide whether, under the totality of circumstances, the border patrol agents at the Sierra Blanca checkpoint had probable cause to believe, before they began their search, that contraband or evidence was concealed in Vargas's truck. If so, then we decide whether those areas searched were reasonable places to believe contraband was hidden.

We first examine whether agent McLane had probable cause to search Vargas's truck under the totality of the circumstances test. We find he did. The purpose of the permanent checkpoint at Sierra Blanca is to intercept aliens attempting to enter the United States without legal permission. To that end, border patrol agents were clearly entitled to ask routine questions and request documents from Vargas. Although Vargas told the agent he was a United States citizen, Agent Hinojosa, who initially questioned him, believed Vargas was probably not a United States citizen because, while saying he had been born in El Paso and attended high school there, Vargas spoke in very heavily accented English. When Agent McLane asked Vargas for identification, Vargas was unable to produce anything—not even a driver's license. This was odd, the agents testified, because a truck driver in commercial commerce must carry not only a commercial driver's license, but also other documents required by the U.S. Department of Transportation and the Texas Railroad Commission.[3] Truck drivers are required under

---

**3.** *See* 49 C.F.R. § 383.23 (1992) (commercial driver's license); 16 Tex.Admin.Code §§ 5.152

both state and federal law to produce their cab card, evidencing current registration and vehicle operation authorization, to any official requesting it.[4] We conclude that Hinojosa was entitled to request that Vargas produce his driver's license, cab card or some other document illustrating his right to be driving in the United States, and when Vargas could not produce any of these documents, though driving a commercial rig on a Texas highway, the border patrol agents had probable cause to believe criminal activity was afoot.

We next examine whether Agent McLane's search encompassed areas where he could reasonably expect to find the evidence he sought. Agent McLane first searched the truck's trailer, which was empty. He then climbed into the truck cab and immediately smelled fresh marijuana. McLane testified he was searching for evidence of Vargas's alienage, because most foreigners claiming United States citizenship will retain a birth certificate or national identification card from their own country as their only means of identification. He testified:

> We believed Mr. Ramos to be an illegal alien and we believed that his identification was hidden in the truck, which was one reason for searching the truck.

We conclude McLane's search of the truck cab for concealed documents was reasonable under the totality of the circumstances, and that the truck cab was a reasonable place to look for this evidence. Once McLane entered the truck cab, the strong smell of marijuana clearly entitled him to search further, a quest which led him not only to 188 pounds of marijuana, but also to an undocumented Mexican woman hiding in the sleeper of the cab. On this ground, therefore, the trial court properly denied Vargas's motion to suppress. We overrule Vargas's sole point of error.

### CONCLUSION

Here, because Vargas could produce no documents evidencing either his right to be in the United States or to drive a commercial tractor-trailer rig on Texas highways, the border patrol agents had probable cause to search the truck for evidence of Vargas's alienage. The truck's cab was a reasonable place to search for secreted identification documents which might prove Vargas was not legally entitled to be in the United States. The trial court did not err in denying Vargas's motion to suppress the marijuana seized as a result of the search.

Additionally, we must correct two errors in the trial court's judgment. The judgment form reflects that Vargas pled guilty; this is incorrect, and the judgment is reformed to reflect a finding of guilt after defendant's plea of not guilty and trial to the court. Further, the sentencing form assesses punishment at "TEX" years in the penitentiary. This is likewise reformed to reflect a sentence of "TEN" years imprisonment.

We affirm the judgment of the trial court as modified.

---

and 5.173 (West Supp.1993) (cab cards and driver's daily log).

**4.** *See* 49 C.F.R. § 1023.38 (1992), 16 Tex.Admin.Code §§ 5.342 and 5.382 (West 1988 and Supp.1993) (alteration of cab card; replacement and inspection of the cab card).