**M.C. HOLT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–94–00452–CR.**

Court of Appeals of Texas,
San Antonio.

Oct. 11, 1995.

Rehearing Overruled Nov. 3, 1995.

Discretionary Review Refused Feb. 7, 1996.

John J. Curtis, Combined Law Enforcement Associations of Texas, San Antonio, for Appellant.

Steven C. Hilbig, Criminal District Attorney and Barbara Hervey, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before STONE, HARDBERGER and DUNCAN, JJ.

## OPINION

STONE, Justice.

This appeal arises from the conviction of M.C. Holt for aggravated sexual assault, sexual assault, and indecency with a child. A jury sentenced Holt to serve twenty years in prison for his offenses. On appeal Holt complains that the trial court erred in overruling his *Batson*-claim of gender discrimination and in denying him a full opportunity to impeach the credibility of the complainant. We disagree and affirm his conviction.

## FACTS

Holt was convicted based on the testimony of his fifteen-year-old step-daughter who accused Holt of sexually molesting her since she was thirteen. There was no real physical evidence introduced at trial and the conviction essentially turned on the credibility of the girl's testimony. During voir dire, the State used each of its ten peremptory strikes against men. Holt challenged the State and the prosecutors responded with their reasons for making the strikes. After considering the State's reasons for striking the men, the trial judge overruled Holt's objections and impaneled a jury of six men and six women. In his first point of error, Holt challenges the State's reasons for striking **four** of the ten men.

Holt contends that the prosecutors failed to give non-pretextual, gender-neutral reasons for their strikes. By improperly striking only men from the venire, Holt argues that the entire jury selection process was invalidated and therefore, he is entitled to a new trial. The State contends that Holt's assertion is not supported by the record and relies on the deference given to trial court findings to argue that Holt's first point of error should be overruled.

## PEREMPTORY CHALLENGES

▮ The authority for Holt's challenge is found in the U.S. Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Prior to *Batson*, use of the peremptory challenge was virtually unlimited, so that both prosecutor and defense counsel exercised peremptory challenges freely in an effort to produce a jury most partial to their side of a case. The Supreme Court explained in *Batson*, however, that the U.S. Constitution "prohibits all forms of purposeful racial discrimination in the selection of jurors," ending the historical latitude given to parties to exercise challenges. *Id.* at 88, 106 S.Ct. at 1718, 90 L.Ed.2d at 82. Under *Batson* a prosecutor cannot use a peremptory strike against a venireman solely on account of race. *Id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83. The Court has extended its holding in *Batson* to **gender**-based peremptory challenges in *J.E.B. v. Alabama*, 511 U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

Finding in *J.E.B.* that "gender, like race, is an unconstitutional proxy for juror incompetence and impartiality," the Court explained that discrimination in the jury selection process harms not only litigants, but potential jurors and the community at large. *Id.* at ——, ——, 114 S.Ct. at 1421, 1427, 128 L.Ed.2d at 97,104. With *J.E.B.*'s application to gender in mind, it is appropriate to review *Batson* for the Court's guidance on evaluating challenges to peremptory strikes.

▮ In *Batson*, the Court laid out a three-step test to evaluate objections to peremptory challenges. To apply the test to this appeal, the word "race" needs only to be replaced with the word "gender".

*Step 1:* The opponent of the challenge must make out a prima facie case of racial discrimination.

*Step 2:* If a prima facie case is made, the burden of production shifts to the proponent of the strike to come forward with a race-neutral reason for exercising the strike.

*Step 3:* If a race-neutral explanation is given, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination.

*See Batson*, 476 U.S. at 94–98, 106 S.Ct. at 1721–1724, 90 L.Ed.2d at 86–89. Although the Supreme Court specified that the burden of proof in a *Batson*-challenge is on the opponent alleging discrimination in the selection of jurors (usually, the defendant), the Court revisited the test in *Purkett v. Elem*, 514 U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

▮ The Court in *Purkett* explained that the prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the strikes in *Step 2*. Legitimate means a reason that does not deny equal protection. *Id.* at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 840. At this point, the explanation provided need not be persuasive or even plausible. Unless discrimination is inherent in the explanation, "the reason offered will be deemed race neutral." *Id.* at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. The persuasiveness of the prosecutor's justification does not become relevant until *Step 3*.

▮ When the prosecutor gives a race/gender-neutral answer, the court must determine whether or not the neutral answer is actually a sham or pretextual answer given to avoid the prohibition against strikes based on race or gender. In determining whether the opponent has met his burden of proving purposeful discrimination, courts consider all available direct and circumstantial evidence. *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85. Texas law is particularly instructive on what should be considered.

In *Keeton v. State*, the Texas Court of Criminal Appeals recognized the difficulty the trial judge faces in assessing a *Batson*-challenge and provided a list of factors to consider in each step of the *Batson*-test. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex. Crim.App.1988) (citing *State v. Antwine*, 743 S.W.2d 51 (Mo.1987)). Relevant to the instant case are the types of evidence listed that can be used to show sham or pretextual answer.

1. The reasons given are not related to the facts of the case.

2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck.

4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors.

5. The prosecutor having 6 peremptory challenges, the prosecutor used 2 to remove the only 2 blacks remaining on the venire.

6. '[A]n explanation based on group bias where the group trait is not shown to apply to the challenged juror specifically.' For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.

*Id.* at 868. *See also Whitsey v. State,* 796 S.W.2d 707, 713–14 (Tex.Crim.App.1989) (op. on reh'g).

### STANDARD OF REVIEW

[8–10] In *Whitsey v. State,* the Court of Criminal Appeals adopted the "clearly erroneous" standard of review for *Batson*-challenges. *Id.* at 726. To determine whether the factfinder's decision is "clearly erroneous," appellate courts must review the record to determine if they are "left with the 'definite and firm conviction that a mistake has been committed.'" *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (citing *U.S. v. Fernandez,* 887 F.2d 564 (5th Cir.1989)). [I]f the findings of the trial judge are supported by the record, the findings are not then clearly erroneous. *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App. 1991), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038.

### HOLT'S *BATSON* CHALLENGE

Holt has challenged the State's use of peremptory strikes against Mr. Paiz, Mr. Spradling, Mr. Monge and Mr. Salinas. He contends the State used pretextual reasons in an attempt to seat as many women as possible in his sexual assault case.

At trial Holt objected and made a prima facie case of gender discrimination by indicating to the trial judge that the State had used all ten of its peremptory strikes against men. (*Step 1* of the *Batson*-test.) In response, the State responded with its reasons for striking each prospective juror. (*Step 2.*) The State's explanations were gender-neutral, so it is necessary to examine the State's explanations in light of its voir dire of the venire to determine whether the State's answers were pretextual. (*Step 3.*)

### A. Mr. Paiz

The State's voir dire examination of venireman Paiz was as follows:

Question: You're a carpenter. Is this Alamo—

Answer: Interiors.

Question: Interiors, okay. You do the finish-out type stuff? Is that what you do?

Answer: Yes. Sheetrock, doors. I do the interiors.

Question: Okay. And you've got one child.

Answer: Yes, sir.

Question: Is it a boy or girl?

Answer: A boy.

Question: How old is he?

Answer: Nine.

Question: Okay. Do you have any sisters?

Answer: No, sir.

Question: No sisters. Do you have any questions about anything that we've just talked about so far?

Answer: No, sir.

The State's reasons for striking Mr. Paiz were that he had one son, and thus insufficient experience with adolescent girls, and "he came across as being kind of stupid."

### B. Mr. Spradling

The State's voir dire of venireman Spradling was as follows:

Question: Mr. Spradling, you have three children?

Answer: I have three children and three stepchildren, six total.

Question: And can you, please, the ages and sexes of each and the distinction?

Answer: I have two girls. One is 37, a boy 39, a boy 41, a girl 43, a boy 45, and another boy 47.

Question: Do you have any stepchildren or step—I mean, stepgrandchildren or step—

Answer: I have 13 grandchildren, 12 of them girls.

Question: Twelve girls?

Answer: Ranging from two to 20.

Question: Do they ever have the occasion to come over and spend the night at your house?

Answer: Quite often. Six at a time.

Question: You're living right, I guess.

Answer: Yes.

The State's reasons for striking Mr. Spradling were that he came across as flippant when he talked about his granddaughters, that he might not have empathy for girls, and that it was revealed at some point in voir dire that he had three brothers who are lawyers.

### C. Mr. Monge

The State's voir dire of Mr. Monge follows:

Question: Mr. Monge, how old are your children?

Answer: I have a boy that is seven and a girl that is three.

Question: Sir, do you have any comments or observations that you would like to make?

Answer: No.

Question: Okay. Do you have any problems being on this type of case?

Answer: No.

Question: Thank you very much.

The State's reasons for striking venireman Monge were that he seemed disinterested and seemed to have a "low intelligence factor."

### D. Mr. Salinas

The State's voir dire of venireman Salinas was as follows:

Question: What are the ages of your children, sir?

Answer: Eight, four and three.

Question: And their sexes?

Answer: Two males and a female.

Question: Which one—

Answer: Two females and a male.

Question: Which ones are the females?

Answer: The eight-year-old is female, the four. The three is a male.

Question: And do you have any comments, observations or anything you need to tell me?

Answer: No.

Question: Any problems sitting on this kind of case?

Answer: No.

The State struck venireman Salinas because he was mixed up about the ages and sex of his children, thus raising the "intelligence factor issue."

We now apply the *Keeton* factors for *Step 3* to determine if the trial court's ruling was clearly erroneous.

1. **Was the State's explanation related to the facts of the case?** The State's explanation concerned the veniremen's status as parents and grandparents, their experience with adolescent girls, their interest in the case, and their intelligence. Whether a venireman is "intelligent" enough to serve as a juror for a particular case is a subjective evaluation on the part of the party exercising the strike and applies to all prospective jurors. Similar considerations have been sustained by the courts; for example, the fact that prospective jurors made errors on juror information cards and lacked education have been found as race neutral answers to a *Batson*-challenge. *See Godine v. State*, 874 S.W.2d 197, 205 (Tex.App.—Houston [14 Dist.] 1994, no pet.). *See also Jones v. State*, 818 S.W.2d 532, 535 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Because of the clues which voice inflection, expression and appearance provide, great deference must be given to the trial judge's impressions in this area. The capability of jurors to understand

the complexities of a particular case is relevant to the facts of any case. Jurors must be capable of intelligently considering the evidence and following the court's instructions.

Further, a prospective juror's level of interest is relevant to the case. Striking a juror for displaying a lack of interest has been sustained by the courts. *See Barnes v. State*, 855 S.W.2d 173, 174 (Tex.App.—Houston [14th Dist.] 1993).

 An adult's experience as a parent also is relevant to a case involving sexual abuse of a family member. Information on family relationships may serve as an indicator of a juror's ability to consider issues arising from such a case.

**2. Was there a lack of meaningful questioning of the struck juror?** Holt complains that the State's questioning of the veniremen was superficial. The State's voir dire focused on three areas: family relationships, occupation, and prior jury experience. The prospective jurors were questioned about their family relationships and their jobs. The State spent a large portion of its time explaining the type of case that was to be heard; consequently, questioning of each member of the venire was limited. Although the questioning was brief, the State's questions to the challenged veniremen were as meaningful as those put to other members of the panel.

 **3. Was there disparate selection of prospective jurors; i.e. were veniremembers, with the same characteristics as the struck juror, impaneled on the jury?** The State indicated it was avoiding jurors, who either had no children or had no female children. Mr. Paiz, who was struck, had only a male child. Holt notes that the State did not strike Ms. Aguinaga, who had only a male child; however, the fact that the State did not strike a woman with only a male child does not in itself make the State's reason for striking Mr. Paiz pretextual.

Holt complains that nothing is reflected in the record that might have elicited information about Mr. Spradling's brothers being lawyers as evidence that the State's answers were pretextual. While it is true that the record does not reflect that Mr. Spradling's brothers were lawyers, this alone does not make an explanation pretextual. Further, the record contains no information that indicates that the State did not strike Mr. Spradling because of its interpretation of his answers as being flippant.

As regards veniremen Monge and Salinas, they were described as disinterested or having a "low intelligence factor." Since the State struck all potential jurors who were described in this way, it cannot be said the State's explanations were pretextual.

**4. Was there disparate examination of a juror: i.e. questioning a juror to evoke a particular response without asking the same questions of other panel members?** Holt does not complain of disparate examination, but rather that the State's voir dire was superficial. Given the time constraints attendant with any trial, it is not surprising that the questioning was relatively brief. Nonetheless, all prospective jurors were questioned in a similar manner.

**5. Was the State's explanation based on a group bias where the group trait is not shown to apply to the struck juror specifically?** There was no evidence in the record that any venireman was struck on the basis of a group trait.

 Prosecutors may call on their experience in prior jury trials in exercising peremptory strikes as long as they do not exercise a strike based on race or gender. *See Garrett v. State*, 815 S.W.2d 333, 336 (Tex.App.—Houston [1st Dist.] 1991, writ ref'd). In this case, the State's explanations can be described as judgment calls based on experience with similar cases. Striking ten men from the venire does not necessarily mean that the State struck the men because they were men. We will not overturn a trial judge's finding that the State exercised its strikes in a gender-neutral manner unless such a ruling is clearly erroneous. *Whitsey*, 796 S.W.2d at 720–723.

After considering the State's questioning of these veniremen, the questioning of the other members of the venire, and the reasons given for the strikes, this Court is not left with a "definite and firm conviction" that the State's reasons for striking the challenged

veniremen were pretextual. Since the State's reasons were not pretextual, appellant has failed to prove purposeful discrimination. Because we are not of a "definite and firm conviction" that the trial judge erred in overruling Holt's *Batson*-claim, we overrule his first point of error.

## CROSS–EXAMINATION OF THE COMPLAINANT

■ In his second point of error, Holt argues that the trial court erred in denying him a full opportunity to impeach the credibility of the complainant. Holt accuses the trial court of becoming part of the prosecution team by denying defense counsel an opportunity to question the complainant about her motivation in making the complaint against her step-father.

Holt's theory at trial was that his stepdaughter made up her story because her parents would not let her attend an ROTC ball after she came home with a "hickey" on her neck. The defense attempted to question the girl in this respect, but the State objected and the defense preserved the testimony in a Bill of Exception. Defense counsel was then allowed to cross-examine the girl about the ball, but not allowed to ask about the "hickey." The girl testified that her parents grounded her "a lot," but that she could not go to the ball because they could not afford to buy her a dress, not because she was grounded. The State contends that the defense was attempting to introduce evidence of sexual activities on the part of the girl; and therefore, the testimony was rightfully excluded as prejudicial and irrelevant.

■ Holt argues that great latitude should be given to the defendant in showing any fact which would tend to establish ill feelings, bias, motive, and animus upon the part of any witness testifying against him. While this is true, it is also true that "the burden of showing the relevance of particular evidence to the issue of bias rests on its proponent." *Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex.Crim.App.1993). The perimeters of cross-examination for showing bias rest on the sound discretion of the trial judge to balance probative value against the risks

of undue prejudice. *Id.* at 27. The trial judge's determination will not be reversed absent a clear abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378–80 (Tex.Crim.App.1990).

We do not agree that the trial judge abused her discretion. The evidence of suggested sexual activity reflected in the Bill of Exception was not probative of any fact in issue and would have been highly prejudicial if admitted. Thus, the trial judge did not err in refusing cross-examination regarding the "hickey" under the guise of demonstrating bias. If in fact defense counsel's intent was to prove the complainant had acted in retaliation because she had been restricted, the trial judge made it clear that such line of questioning was permissible. However, the complainant had already testified that she did not go to the ball because of financial reasons, and not because she was grounded. Her testimony in the Bill of Exception is consistent with that testimony. In the Bill of Exception, the complainant read an excerpt from her diary which implied she had a prior sexual encounter with a boyfriend. She also testified that her parents had not restricted her from the ball because of the "hickey." Had the trial judge admitted this evidence, the defense would have gained nothing except possibly to prejudice the jury against the complainant. Under these circumstances, the trial court did not err.

## REDIRECT EXAMINATION OF THE GRANDMOTHER

■ Holt also complains that he was denied an opportunity to question the complainant's grandmother. Specifically, he wanted to ask the grandmother whether the Holts were "good parents." The State objected on the grounds that the defense was attempting to establish specific acts of conduct that described a character trait that had not been attacked; i.e. whether the girl's parents were "good parents." The trial judge sustained the objection finding that the questioning went beyond the issue that was involved.

"Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination

of the action more or less probable than it would be without the evidence. TEX.R.CRIM. EVID. 401. Evidence which is not relevant is inadmissible. TEX.R.CRIM.EVID. 402. Here, the trial judge correctly found that the issue of whether the appellant had been a "good parent" as shown by sheltering and feeding his step-daughter had no bearing on appellant's guilt or innocence in the sexual-assault charge. The character trait of "being a good parent" was not in issue. The issue was whether Holt sexually-assaulted his step-daughter.

 Holt also complains that he was unable to question the grandmother about whether the complainant was afraid of her step-father. Since Holt's defense was that the complainant fabricated her story to retaliate against her parents for disciplining her, the defense wanted to ask the grandmother about the girl's reactions to her parents. The defense reasoned that if Holt had actually tried to penetrate her with a flashlight and a screwdriver, she would have been afraid of Holt and would have acted accordingly in front of her grandmother. By showing that the complainant had not acted frightened of Holt, the defense hoped to impeach the complainant as a witness. The State objected on the grounds that the complainant had not testified that she was afraid of Holt, so the girl's fear was not in issue. The trial judge accepted the State's reasoning and sustained the objection.

We agree with the trial judge. Had the girl told her grandmother that she was afraid of her step-father based on his sexual abuse of her, those statements would have been admissible under Texas Rule of Criminal Evidence 803(3). But defense counsel wanted the grandmother to "speculate" about the girl's fear, which was not in question. Had there been any evidence that the complainant had told her grandmother that she was afraid, that testimony could have been preserved in a Bill of Exception. Holt made no such offer of proof.

We find that Holt has failed to demonstrate the relevance of the particular evidence on the issue of bias. No abuse of discretion has been shown. Having found that the trial judge did not err, we overrule Holt's second point of error.

## CONCLUSION

We find that the State's strikes of veniremen on the jury panel were not gender-biased in violation of constitutional protections. We further find that the trial court properly exercised its discretion in prohibiting questioning of complainant about her sexual behavior, and in prohibiting questioning of the complainant's grandmother about speculative matters. Accordingly, the points of error are overruled and the judgment of the trial court is in all things affirmed.