Walter BREWER, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00253–CR.

Court of Appeals of Texas,
El Paso.

June 13, 1996.

John Hagler, Dallas, for Appellant.

John Vance, Criminal Dist. Atty., Dallas, for State.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

McCLURE, Justice.

Walter Brewer appeals his conviction for the offense of possession of cocaine, enhanced by two prior felony convictions. The jury found Appellant guilty; the trial court found both enhancement paragraphs true and assessed punishment at imprisonment for a term of 45 years in the Texas Department of Criminal Justice, Institutional Division. We affirm.

### BATSON CHALLENGE

In Point of Error No. One, Appellant contends the trial court erred in overruling his objection to the State's use of a

peremptory challenge to exclude an African–American veniremember, Reginald Peoples, from the jury. Under *Batson v. Kentucky,* the defendant is required to make a prima facie showing by raising an inference of purposeful discrimination on the part of the prosecuting attorney. *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986); *Belton v. State,* 900 S.W.2d 886, 897 (Tex.App.—El Paso 1995, pet. ref'd). Once the accused establishes a prima facie case of racially motivated strikes, the burden of production shifts to the State to provide a race-neutral explanation. *Emerson v. State,* 851 S.W.2d 269, 271–72 (Tex. Crim.App.1993); *Calderon v. State,* 847 S.W.2d 377, 382 (Tex.App.—El Paso 1993, pet. ref'd). In this context, a race-neutral explanation means one based on something other than the race of the juror. *Hernandez v. New York,* 500 U.S. 352, 358–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *Francis v. State,* 909 S.W.2d 158, 162 (Tex.App.—Houston [14th Dist.] 1995, no pet. h.). It must relate to the particular case to be tried, but need not rise to the level justifying exercise of a challenge for cause. *Batson,* 476 U.S. at 97, 98, 106 S.Ct. at 1723, 1724; *Francis,* 909 S.W.2d at 162. Moreover, the explanation need not be persuasive, or even plausible. *Purkett v. Elem,* 514 U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); *Francis,* 909 S.W.2d at 162. The issue here is the facial validity of the prosecutor's explanation. *Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771; *Francis,* 909 S.W.2d at 162. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

If the prosecutor's explanation is facially valid, the burden of production shifts back to the accused to establish by a preponderance of the evidence that the reasons given were merely a pretext for the State's racially motivated use of its peremptory strikes. *Salazar v. State,* 818 S.W.2d 405, 409 (Tex.Crim.App.1991); *Calderon,* 847 S.W.2d at 382. The defendant must do more than simply state his disagreement with some of the State's explanations; he must prove affirmatively that the State's race-neutral explanations were a sham or pretext. *Davis v. State,* 822 S.W.2d 207, 210 (Tex. App.—Dallas 1991, pet. ref'd); *Straughter v. State,* 801 S.W.2d 607, 613 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

In reviewing the findings of the trial court on *Batson* issues, this Court follows the clearly erroneous standard. *Emerson,* 851 S.W.2d at 273; *Vargas v. State,* 838 S.W.2d 552, 554 (Tex.Crim.App.1992); *Davis,* 822 S.W.2d at 210. We must analyze the decision of the trial court by reviewing the record in its entirety and by considering the voir dire process, including the make-up of the venire, the prosecutor's explanation, and the defendant's rebuttal and impeachment evidence. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1990)(opinion on reh'g); *Davis,* 822 S.W.2d at 210. We examine the record in the light most favorable to the trial court's rulings. *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Davis,* 822 S.W.2d at 210. It is incumbent upon Appellant, if he is to be successful, to provide a record illustrating that the trial judge's findings are clearly erroneous. *Williams,* 804 S.W.2d at 101; *Mata v. State,* 867 S.W.2d 798, 805 (Tex. App.—El Paso 1993, no pet.); *see also Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App. 1992); *Wyle v. State,* 836 S.W.2d 796, 797 (Tex.App.—El Paso 1992, no pet.).

The prosecutor provided explanations for the State's use of its peremptory challenges against certain African–American venirepersons and an Hispanic venireperson.[1] He stated that he attempted to identify educated upper-class individuals or "at least folks that had some degree of education," and he struck Mr. Peoples because he is employed as a route driver for the City of Mesquite. He also found Mr. Peoples to be "slow" in his responses during voir dire. Other than his cross-examination of the prosecutor, Appellant offered no evidence in support of his *Batson* challenge.

---

1. On appeal, Appellant challenges only the State's use of a peremptory challenge against Mr. Peoples. Therefore, we will not set forth the explanations concerning the other venirepersons.

■ Appellant argues that the State failed to carry its burden of proof by providing a reasonably clear, specific, and legitimate race-neutral explanation. The difficulty with this argument is that it combines the second and third steps of the *Batson* inquiry. In *Purkett v. Elem,* the United States Supreme Court reiterated that the burden of proving purposeful discrimination rests always with the party challenging his opponent's use of peremptory strikes. *See Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771. It is error for an appellate court to combine the second step of a *Batson* inquiry, in which a challenged party offers race-neutral reasons for the challenged peremptory strikes, with the third step, in which the court determines whether the challenging party has carried his burden of proving purposeful discrimination. *Id.* Therefore, we will not consider the legitimacy of the explanation in determining whether the State carried its burden of providing a race-neutral explanation.

■ The prosecutor explained that he struck Peoples because of his occupation or position of employment and he seemed "slow" in his responses during voir dire. These explanations are related to the type of juror the prosecutor was seeking for this particular jury, that is, intelligent or educated individuals. Given Appellant's cross-examination of the prosecutor, the parties understood the prosecutor's reference to "slow" to mean slow-witted or possessing below-average intelligence. Lack of education or below-average intelligence has been held to be a race-neutral explanation for exercising a peremptory challenge. *See Holt v. State,* 912 S.W.2d 294, 299–300 (Tex.App.—San Antonio 1995, pet. ref'd); *Godine v. State,* 874 S.W.2d 197, 205 (Tex.App.—Houston [14th Dist.] 1994, no pet.). *See also Jones v. State,* 818 S.W.2d 532, 535 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Further, the prosecutor's explanation that he struck Peoples because of his occupation is also race-neutral. *Davis,* 822 S.W.2d at 211 (a venireperson's occupation may serve as a race-neutral explanation for striking that venireperson); *York v. State,* 764 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd)(striking minority venireperson due to her occupation

as a social worker is race-neutral explanation). For these reasons, the State met its burden of production and rebutted Appellant's prima facie case of purposeful discrimination. Appellant's first argument is without merit.

■ We will next consider whether Appellant carried his burden of establishing that the prosecutor's explanation is a sham or pretext. Appellant first argues that the record does not reflect that Peoples was "slow" in his responses to questions during voir dire. In recording the veniremembers' responses to questions, the court reporter did not identify them by name and referred to them only as "Prospective Juror." Thus, we are unable to determine whether or not the prosecutor directed questions at Peoples or whether his responses reflect that he was slow-witted or less intelligent than other prospective jurors. Whether a veniremember is sufficiently "intelligent" to serve as a juror for a particular case is a subjective evaluation on the part of the party exercising the strike and applies to all prospective jurors. *Holt,* 912 S.W.2d at 299. The capability of jurors to understand the complexities of a particular case is relevant to the facts of any case. *Holt,* 912 S.W.2d at 299–300. Jurors must be capable of intelligently considering the evidence and following the court's instructions. *Holt,* 912 S.W.2d at 300. Because of the clues which voice inflection, expression and appearance provide, great deference must be given to the trial judge's impressions in this area. *Holt,* 912 S.W.2d at 299. Since the record does not demonstrate that this explanation is a sham or pretext, Appellant's argument is without merit.

Appellant next points out that the prosecutor exercised a peremptory challenge against Lauren Henderson, a white college student, but did not strike Timothy Jones, who is an African–American venireperson employed as a maintenance man with DART. He argues that if education level or position of employment were a legitimate reason for exercising peremptory challenges, the prosecutor would have struck Jones, but not Henderson. The prosecutor explained that

he struck Henderson because she is a student and based upon her responses during voir dire. Appellant did not cross-examine the prosecutor about Henderson's responses which concerned him, and the record does not otherwise reflect which answers are hers. Consequently, we are unable to conclude that his explanation for striking her is illegitimate. Further, Appellant did not cross-examine the prosecutor about his decision to retain Jones despite his possible lack of education or position of employment. Because the record fails to establish that the prosecutor's explanation is a sham or pretext, the trial court's decision to overrule the *Batson* challenge is not clearly erroneous. Point of Error No. One is overruled.

### ILLEGAL DETENTION

In Points of Error Nos. Two and Three, Appellant contends that the trial court erred in admitting cocaine and a laboratory report because the evidence was obtained as the result of an illegal detention in violation of the Fourth Amendment and Article I, Section 9 of the Texas Constitution. The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Morris v. State*, 897 S.W.2d 528, 530 (Tex.App.—El Paso 1995, no pet.); *Vargas v. State*, 852 S.W.2d 43, 44 (Tex. App.—El Paso 1993, no pet.). As a reviewing court, we do not perform our own factual review, but simply decide whether the trial court's findings are supported by the record; if so, we do not disturb the trial court's factual determinations, but we do address the question of whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Morris*, 897 S.W.2d at 530; *Vargas*, 852 S.W.2d at 44. We view the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988); *Alvarado v. State*, 894 S.W.2d 869, 874 (Tex. App.—El Paso 1995, pet. ref'd); *Perez v. State*, 818 S.W.2d 512, 514 (Tex.App.—Houston [1st Dist.] 1991, no pet.). We must con-

sider the totality of the circumstances in determining whether the trial court's findings are supported by the record, and we will not disturb the findings absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). If the trial court's decision is correct on any theory of law applicable to the case, we must sustain it. *Romero*, 800 S.W.2d at 543; *Morris*, 897 S.W.2d at 531; *Vargas*, 852 S.W.2d at 44. This principle holds true even when the trial court gives the wrong reason for its decision, and it is especially true with regard to the admission of evidence. *Romero*, 800 S.W.2d at 543; *Morris*, 897 S.W.2d at 531; *Vargas*, 852 S.W.2d at 44.

Appellant alleged in a written, pretrial motion to suppress the evidence that the police lacked probable cause. After jury selection, the trial judge advised Appellant that he would carry the motion to suppress over to trial and would rule on its merits after hearing the testimony of the officers. Luis E. Canales, a police officer employed by the City of Dallas, testified that he worked in a deployment unit which targeted narcotic, robbery, and burglary "hot spots." At 10 p.m. on August 30, 1993, he was working in plain clothes at an apartment complex in Dallas. This particular assignment grew out of a complaint by the apartment manager concerning suspected drug trafficking. Canales sat in a vehicle across the street from the complex and watched through lowlight binoculars. During the thirty minutes he watched, he saw one male walking around in a breezeway of the apartments. Appellant walked from across the street into the breezeway where he met with this same male. After speaking briefly, they went into a portion of the breezeway where Canales could not see them, and in thirty or forty seconds, Appellant exited.

After Appellant left the complex, he walked back across the street towards a convenience store. Appellant looked at something in his hand, closed his hand, and continued walking towards the store. Canales believed that Appellant had just gotten something which he held in his hand. He contacted a uniformed officer by radio and gave him

this information and a description of Appellant. He did not instruct them to arrest Appellant. Canales testified that the activity he observed was consistent with the purchase of narcotics, but he admitted that it was also consistent with innocent activity.

Warren Breedlove, a police officer for the City of Dallas, testified that he was on patrol with his partner on August 30, 1993, when he received a radio call from a plain-clothes officer concerning a possible drug transaction. Based upon that officer's description of the individual and the location he was given, Breedlove pulled up next to Appellant in the parking lot of the convenience store and asked if he could speak with him for a minute. When Appellant agreed to speak with him, Breedlove asked him to step back from the car door so that he could exit the vehicle. Breedlove testified that Appellant was free to go and that he would not have detained Appellant had he refused to speak with him. As he got out of the car, Breedlove watched Appellant's hands. He saw Appellant drop two small rock-like substances onto the asphalt of the parking lot. Breedlove picked up the rocks and his partner arrested Appellant.

Appellant offered no evidence in support of his motion to suppress. He objected to the admission of the cocaine and a laboratory report on the grounds that the officers lacked a reasonable suspicion to justify a detention of Appellant or probable cause for an arrest. The trial court denied the motion to suppress and overruled those objections.

Appellant contends that a seizure occurred for Fourth Amendment and Article I, Section 9 purposes when the officer confronted him and told him to step back from the vehicle because a reasonable person would not have felt free to leave. Therefore, he argues that the State was required to justify the detention by showing the existence of reasonable suspicion or probable cause. Relying in part on *California v. Hodari D*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the State argues that this was a consensual encounter and it was unnecessary to show reasonable suspicion or probable cause. We agree with the State.

Both the Fourth Amendment and Article I, Section 9 of the Texas Constitution guarantee individuals the right to be free from unreasonable seizures. U.S. CONST. Amend. IV; TEX.CONST. Art. I, § 9. Not all encounters between law enforcement personnel and citizens invoke the protection of the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *Daniels*, 718 S.W.2d at 704; *Bunts v. State*, 881 S.W.2d 447, 450 (Tex.App.—El Paso 1994, pet. ref'd). A stop of an individual by the police violates these guarantees only if (1) the stop or detention constitutes a seizure and (2) the seizure is unreasonable.

A seizure or detention occurs if, in light of all the circumstances surrounding an encounter between a police officer and an individual, the officer's conduct would communicate to a reasonable person that he is not free to go, or not free to refuse the officer's requests. *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); *Reyes v. State*, 899 S.W.2d 319, 323 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). A defendant is detained if, from his or her perspective, there has been such a display of official authority that a reasonable person would not have felt that he was free to leave. *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Chambers v. State*, 866 S.W.2d 9, 19 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Shelby v. State*, 888 S.W.2d 231, 233 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). The Supreme Court added to the *Mendenhall* analysis in *California v. Hodari D* by holding that a person has not been seized until he has yielded to a law enforcement officer's show of authority or when officers physically limit his movement. *See California v. Hodari D*, 499 U.S. at 626–28, 111 S.Ct. at 1551; *Johnson v. State*, 912 S.W.2d 227, 234 (Tex.Crim.App.1995)(applying *California v. Hodari D* to Article I, § 9 of the Texas Constitution).

Law enforcement officers do not violate the Fourth Amendment when they merely approach a citizen in public and ask if he is willing to answer some questions or by putting questions to him if the person is willing to listen. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Johnson,* 912 S.W.2d at 235. In this situation, the citizen is free to ignore the officer and walk away. *Johnson,* 912 S.W.2d at 235. The encounter is consensual so long as a reasonable person would feel free "to disregard the police and go about his business." *Johnson,* 912 S.W.2d at 235, *quoting California v. Hodari D,* 499 U.S. at 628, 111 S.Ct. at 1552. In a consensual encounter, an officer need not have any articulable reasons for initiating an encounter or approaching a citizen and asking questions because constitutional concerns are not implicated. *Florida v. Bostick,* 501 U.S. 429, 433, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Johnson,* 912 S.W.2d at 235.

For our purposes, the appropriate inquiry is whether there was such a display of authority that a reasonable person would not have felt free to leave or decline Breedlove's requests. *See Bunts,* 881 S.W.2d at 450. Breedlove, who was dressed in his uniform and driving a marked patrol car, drove up to Appellant, who was walking towards the police car in the parking lot, and asked if he could speak with him. Appellant agreed to do so. Breedlove did not command or request that Appellant stop and he did not block Appellant's path or otherwise physically deter him. Further, there is no evidence that Breedlove indicated to Appellant that he was required to comply with his request to speak with him or that Appellant felt compelled to do so. Contrary to Appellant's position, Breedlove's subsequent request that Appellant take a step or two back from the car door so that he could exit his car is not such a show of authority that it converts this encounter into a detention. Nothing in that request compelled Appellant to stay and speak with the officers.

Viewed in the light most favorable to the trial court's ruling, we find the evidence suffi-cient for the trial judge to find that, from Appellant's point of view, there was not such a display of official authority that a reasonable person would have believed he was not free to leave or decline the officer's requests; therefore, there was no detention. *See Bostick,* 501 U.S. at 437, 111 S.Ct. at 2388 (stating no seizure occurs so long as the officers do not indicate that the person being questioned must comply with their requests); *Holladay v. State,* 805 S.W.2d 464, 471–72 (Tex.Crim.App.1991)(no detention occurred where officer approached defendant in airport, and asked if defendant would speak with him and defendant consented; facts showing that the officer subsequently identified himself as a police officer, asked questions of defendant as they walked through the concourse and asked that the defendant produce identification upon learning that he lied about having just arrived in Houston did not convert the encounter into a detention); *Reyes,* 899 S.W.2d at 323 (no detention occurred where officer merely told appellant he was a police officer, showed appellant his identification, and asked if he could speak with him); *Warden v. State,* 895 S.W.2d 752, 754–55 (Tex.App.—Texarkana 1994, pet. ref'd)(no seizure occurred where police officer approached the appellant and his companion while they were sitting in a car by the roadside and asked them what they were doing; no evidence that the patrol car was parked in such a way as to prevent the individuals from leaving or that the officer ordered appellant to talk or that she only spoke to him because she felt compelled to do so). Because Appellant had not been detained at the time he dropped the cocaine, it was not obtained as the result of an illegal detention. Therefore, the trial court did not abuse its discretion in denying Appellant's motion to suppress. Points of Error Nos. Two and Three are overruled.

Having overruled all of Appellant's points of error, the judgment of the trial court is affirmed.