Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




PABLO LUIS LOPEZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-02-00450-CR


Appeal from the


168th Judicial District (Impact) Court


of El Paso, Texas


(TC# 20020D01926)


M E M O R A N D U M O P I N I O N



 This is an appeal from the denial of a motion to suppress resulting in a conviction for
possession of cocaine having an aggregate weight of more than one gram but less than four
grams. After denying Appellant's motion to suppress, and upon the entry of a plea of guilty
to the lesser offense of possession of cocaine having an aggregate weight of less than one
gram, the trial court sentenced Appellant to one (1) year in the State Jail. We affirm the
judgment of the trial court.

I. SUMMARY OF THE EVIDENCE

 The record in the instant shows that on December 1, 2001, Agent Vincent J. Garrahan,
assigned to the United States Border Patrol, Bicycle Patrol Unit in El Paso, Texas, was
performing his duties along with fellow Border Patrol Agent William Schadle. Their duties 
consisted of patrolling the general area of downtown El Paso, on mountain bicycles, in search
of undocumented aliens. At approximately 9 p.m. that evening, Agents Garrahan and
Schadle were patrolling in the area of San Antonio and El Paso Streets in downtown El Paso.
According to Agent Garrahan, the area is known for undocumented alien smuggling,
undocumented alien prostitutes, and street-level narcotics. Agent Garrahan testified that as
they turned the corner of San Antonio and El Paso Streets, they proceeded toward to the
Rainbow Hotel, an area likewise known for its unsavory and illegal activity. As he turned
the corner, he observed Appellant at a truck which was stopped in front of the Rainbow
Hotel. Agent Garrahan testified that Appellant's truck got his attention because it was a
pretty nice 1994 or 1995 Suburban that looked newer than it actually was. He looked and
observed Appellant and concluded that he was Cuban. 

 Agent Garrahan testified that as he rode his bicycle past Appellant's truck, he noticed
that Appellant's truck had Florida license plates on it so he proceeded to pull up next to
Appellant. Appellant's driver's side window was open, so he could see Appellant as he
approached from the sidewalk side. Agent Garrahan testified that he kept eye contact with
Appellant through his side view mirror because Appellant was staring at him. As he rode up
and grabbed Appellant's truck window sill, he said "Hey," at which point Appellant is said
to have driven off at a rapid rate of speed. (1) 

 The record shows that Agent Garrahan and his partner immediately gave chase on
their bicycles. He had already noted the description of Appellant's truck as well as its license
plate number and got on the radio and put it out for other mobile units. 

 Border Patrol Agent Curtis Logan testified that on the evening of December 1, 2001,
at approximately 9 p.m., he was on duty patrolling in the downtown area of El Paso, Texas
when he received a dispatch call requesting assistance from another agent. He stated that the
call was from one of their bike units that was in pursuit of someone who was running from
them in what he believed to be a Chevy Suburban. He stated that upon receiving the dispatch
call, he proceeded in a northerly direction and observed Appellant's vehicle parked on the
south side of the street. He noticed that there was an individual, later identified as Appellant,
standing outside of the vehicle leaning against the rock wall on the sidewalk. He approached
Appellant, identified himself to him, and asked Appellant where he was from. Appellant
replied that he was from Cuba. Agent Curtis then asked Appellant whether he had
documents, but has no recollection what Appellant's reply was to the question. According
to Agent Curtis, a quick check on the computer system indicated that Appellant did not have
documents, had a driver's license, and also had a criminal record. Prior to receiving
confirmation on whether Appellant had documents, and while the computer inquiry was in
process, Agent Curtis turned Appellant around and frisked him to make sure he did not have
any weapons on him. In the interim, Agents Garrahan and Logan arrived on their bicycles. 


 Agent Curtis stated that once the computer check revealed that there was no record
on Appellant among the Border Patrol records, he concluded that Appellant was here
illegally. Appellant was then placed in custody by Agent Garrahan and transported to the
Paso Del Norte International Bridge for processing. Prior to Appellant being placed in a
holding cell at the Paso Del Norte International Bridge, he was patted down and his pockets
turned inside out. It was at that point that cocaine fell out of Appellant's pocket and onto the
floor. 

 Appellant testified at the hearing on the motion to suppress. He stated that on the
evening of December 1, 2001 he was driving his wife's cousin's car, a 1993 Suburban. He
stated that he had gone into the Rainbow Hotel because he had been told that it was the
cheapest in the area. He indicated that the manager advised him that there was one vacancy,
but that the room did not have an air conditioner. Appellant stated that he then left the hotel
and got into the car when he saw that there were two immigration officers coming. He stated
he left in a normal way, and that when he was approximately two blocks away, he heard a
commotion, looked in his rear-view mirror, and voluntarily stopped his car and waited for
the agents to arrive, since they were traveling by bicycle. Appellant noted that after waiting
approximately three or four minutes, another immigration officer arrived by vehicle who
asked his nationality. Appellant responded that he was legal, Cuban, and living in Miami.
Appellant testified that he was never patted down for weapons, but merely asked if he had
weapons, drugs, or the like. He was transported, placed in a cell, and approximately one-half
hour later, was removed from the cell and patted down at that point. 

 On cross-examination, Appellant stated that he was residing legally in the United
States, having been here since 1994. He testified that he was in El Paso at the time as a result
of a traffic accident that he had on Interstate 10.

II. DISCUSSION

A. Standard of Review


 In his sole issue on review, Appellant maintains that the trial court erred by denying
his motion to suppress tangible evidence, i.e., the cocaine.

 In reviewing a trial court's ruling on a motion to suppress, we use a bifurcated
standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We
afford almost total deference to a trial court's determination of historical facts supported by
the record, especially when the trial court's fact findings are based upon an evaluation of
credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)(citing
Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). We afford the same
amount of deference to the trial court's ruling on mixed questions of law and fact if the
resolution of those questions turns on an evaluation of credibility and demeanor. Guzman v.
State, supra at 89. However, we review de novo the trial court's application of the law to the
facts. Guzman v. State, supra at 89. At a suppression hearing, the trial judge is the sole and
exclusive trier of fact and judge of the credibility of the witnesses and their testimony. In this
case, the trial court did not make explicit findings of fact, so we will, therefore, review the
evidence in a light most favorable to the trial court's ruling. See State v. Ballard, 987 S.W.2d
889 (Tex. Crim. App. 1999).

B. Authority of an Immigration and Naturalization Service Agent to Question


 In the instant case, Appellant sought to suppress physical evidence obtained from his
person after an unlawful detention by agents of the United States Border Patrol. 

 The Immigration and Nationality Act (the "INA") allows an Immigration and
Naturalization Service Agent to question a person, believed to be an alien, about his or her
"right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). This statutory
provision is of course not unlimited, but rather, is controlled by the Fourth Amendment. U.S.
CONST. Amend. IV. An INS, or in this case a Border Patrol, Agent may not question any
individual as to his or her right to be or to remain in the United States unless the Border
Patrol Agent has a reasonable suspicion, based on specific articulable facts involving more
than mere ethnic appearance, that the individual is an alien. United States v. Brignoni-Ponce,
422 U.S. 873, 877-78, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); Illinois Migrant Council
v. Pilliod, 540 F.2d 1062, 1066 (7th Cir. 1976), modified, 548 F.2d 715 (7th Cir. 1977) (en
banc); Au Yi Lau v. INS, 445 F.2d 217, 223 (D.C. Cir. 1971), cert. denied, 404 U.S. 864, 92
S.Ct. 64, 30 L.Ed.2d 108; Ramirez v. Webb, 599 F.Supp. 1278, 1282 (W.D. Mich. 1984),
aff'd, 787 F.2d 592 (6th Cir. 1986).

 Law enforcement officers do not violate the Fourth Amendment when they merely
approach a citizen in public and ask if he is willing to answer some questions or by putting
questions to him if the person is willing to listen. Florida v. Royer, 460 U.S. 491, 498, 103
S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim.
App. 1995); Brewer v. State, 932 S.W.2d 161, 168 (Tex. App.--El Paso,1996). In this
situation, the citizen is free to ignore the officer and walk away. Johnson, 912 S.W.2d at
235; Brewer, 932 S.W.2d at 168. The encounter is consensual so long as a reasonable person
would feel free "to disregard the police and go about his business." Johnson, 912 S.W.2d at
235, (quoting California v. Hodari D, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d
690 (1991)); Brewer, 932 S.W.2d at 168. In a consensual encounter, an officer need not have
any articulable reasons for initiating an encounter or approaching a citizen and asking
questions because constitutional concerns are not implicated. Florida v. Bostick, 501 U.S.
429, 433, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); United States v. Mendenhall, 446
U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); Johnson, 912 S .W.2d at 235. We note at the outset that Appellant was never stopped by the Border Patrol Agents,
but rather, he voluntarily stopped his car and waited for the agents to arrive, since they were
traveling by bicycle. Appellant noted that after waiting approximately three or four minutes,
another immigration officer arrived by vehicle who asked his nationality. In light of the
above, we find that the approach by Border Patrol Agent Logan was consensual and
Appellant was free to answer or not answer, and in fact simply walk away. Instead,
Appellant responded that he was legal, Cuban, and living in Miami. 

 Further, the Border Patrol Agents must have a reasonable suspicion of illegal alienage
in order to detain or "seize" a person for interrogation. This detention, or seizure, is
permissible so long as the detention does not last any longer than necessary to determine
whether or not the individual is an alien illegally in the United States. United States v.
Brignoni-Ponce, 422 U.S. at 881, 95 S.Ct. at 2580; Mendoza v. INS, 559 F.Supp. 842, 848
(W.D. Tex. 1982). The record in the instant case shows that the detention was long enough
for Agent Logan to inquire of the computerized system whether Appellant was legally in the
United States. Once Agent Logan was advised that Appellant was in the United States
illegally, he was placed under arrest. The search of Appellant's person was performed
pursuant to a lawful arrest Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26
L.Ed.2d 419 (1970). Appellant's sole issue on review is overruled.

 Having overruled Appellant's sole issue on review, we affirm the judgment of the trial
court.

June 10, 2004



 RICHARD BARAJAS, Chief Justice




Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. Agent Garrahan testified that it was his intent to ask Appellant what part of Miami he was from, because
he was also from Miami.