COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RANDALL GENE SKIPWORTH,                       )

                                                                              )              
No.  08-03-00014-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
283rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0201586-LT)

                                                                              )

 

 

O
P I N I O N

 

Appellant Randall
Gene Skipworth appeals his conviction for possession of a controlled substance,
to-wit:  methamphetamine, in an amount of
four grams or more but less than 200 grams. 
A jury found Appellant guilty of the offense as charged in the indictment.  Appellant pled true to two prior felony
convictions.  He elected to be sentenced
by the trial court, which assessed punishment at 30 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  On appeal, Appellant raises two issues, in
which he contends the trial court erred in denying his pretrial motion to
suppress and erred in denying his request for a jury instruction pursuant to
Article 38.23(a) of the Texas Code of Criminal Procedure.  We affirm.








Appellant does not
challenge the sufficiency of the evidence to sustain his conviction, but we
briefly recite facts from the trial that are relevant to or provide context for
Appellant=s issues
on appeal.  On January 31, 2002, Dallas
police were informed by the Drug Enforcement Agency that Cassandra Fontana, was
staying in Apartment 3018 of the Budget Suites in Dallas County and that she
had felony warrants out for her arrest. 
Late that same day, Dallas police deployment squad prepared to execute
the arrest warrant by setting up undercover surveillance of the apartment[1]
to see if Ms. Fontana was at that location. 
Two covert officers watched the apartment for about forty-five minutes
before seeing Ms. Fontana stand on the apartment balcony smoking a
cigarette.  They radioed to uniformed
officers who were waiting on the other side of the building complex.  By the time the three uniformed officers
reached the apartment, Ms. Fontana had gone back inside.

Officers Jeffrey
Eggleston, Albert Wagner, and Michael Milligan approached the apartment and
knocked on the door.  A female later
identified as Rebecca Decla answered the door. 
Officer Eggleston testified that they told her that her car was being
towed as a ruse to have the door opened rather than use force to enter the
apartment.  The officers then asked for
Ms. Fontana and Ms. Decla told them she was in the bathroom.  After Ms. Fontana exited the bathroom, the
officers told her they had a warrant for her arrest at which time she was
arrested and handcuffed.  The officers
then did a protective sweep of the apartment for officer safety.  According to the officers, Ms. Fontana gave
verbal consent to search her apartment.








While the officers
were searching the apartment, two males knocked on the apartment door.  Officer Eggleston testified that the officers
conducted a pat-down search for officer safety, obtained their identification,
and Ms. Decla=s
identification, and then he left the apartment to check for outstanding
warrants on these persons on his computer in the squad car.  The covert officers observed Officer
Eggleston leaving the apartment about five or ten minutes after seeing the two
males enter the apartment.  About five
minutes later, covert officers observed a male individual, later identified as
Appellant, approach the apartment.  They
then tried to get in contact with the officers inside to inform them that
somebody else was approaching the door. 
Covert officer Ruben Felan testified that he made contact with Officer
Wagner about somebody approaching the door.

At trial, Officer
Wagner testified that he was searching the bedroom while Officer Milligan was
watching the people in the living room and Officer Eggleston was out at the
squad car checking for warrants. 
According to Wagner, they were radioed that someone was approaching the
door and he went towards the front door, which was about six feet away.  As he approached the door, Appellant opened
the door with a key and entered.  Officer
Wagner testified that Appellant was holding two bags in his left hand and what
he later determined was a cell phone and keys in his right hand.  The officer testified that he ordered
Appellant to drop what he was holding and put his hands above his head.  Appellant dropped the bags and Officer Wagner
heard a clanking sound and observed glass pipes and a small glass vial fall out
of one of the bags.  The officer stated
that he immediately recognized the items as drug paraphernalia and placed
Appellant under arrest for possession of drug paraphernalia.  Incident to that arrest, Officer Wagner
searched the rest of the green bag and recovered inter alia a substance
that field-tested positive as methamphetamine.








Cassandra Fontana
testified as a defense witness that she had been living at the Budget Suites
for about two or three weeks and was planning to leave that night.  Ms. Fontana heard the knock on the door and
knew it was the police because they identified themselves and said they wanted
to notify Ms. Decla that her car had been towed.  Ms. Fontana went to the bathroom to flush
some drugs down the toilet.  Then she
heard the officers ask for her and she came out of the bathroom for them to
handcuff her.  According to Ms. Fontana,
the officers started to search and she was never asked nor did she give verbal
consent to the search.  Officer Milligan
asked her if she would make a phone call to see if she could get somebody over
with some dope to make an arrest.[2]  However, Ms. Fontana tried but her contact
was not able to come.  Ms. Fontana then
testified that she was sitting on the edge of the couch when an individual
named David knocked on the door.  The
officers went to the door, which was locked and latched, and attempted to open
the door but the latch was still on. 
They shut the door, unbolted it, and then dragged David inside the
room.  Ms. Fontana recalled that the
officers got David=s
identification, patted him down, ran his license, and then let him go.








According to Ms.
Fontana, Appellant knocked on the door shortly thereafter.  She stated that she did not give Appellant a
key to the apartment and he did not have a key. 
When she heard the knock on the door, she turned and saw two officers go
to the door to let him in.  They
unlatched the door and opened it like they had done with David, shut the door
real quick and let the latch off, and then the two officers grabbed Appellant
and pulled him into the room. 
Ms. Fontana stated that Appellant had a black address book, a cell
phone, and car keys in his hands.  When
the officers grabbed  him, he dropped
everything on the floor and then they started searching him and then handcuffed
him.  Appellant, she claims, did not have
the green bag on him.  Instead, she
testified that the green bag and its contents including the drugs belonged to
her and was in the room before Appellant arrived, lying on the carpet,
underneath the coffee table in the living room, camouflaged by the same colored
carpet.

DISCUSSION

Motion
to Suppress

In Issue One,
Appellant contends the trial court erred in denying his motion to suppress
because he was illegally seized, either arrested or detained, when he was
ordered to drop his possessions or was dragged into the room by officers.  Appellant argues his illegal seizure was a
direct link to Officer Wagner hearing the glass vials inside the green bag, his
subsequent arrest for possession of drug paraphernalia, and eventual discovery
of methamphetamine, evidence which was the Afruits@ of the illegal seizure.

Standard
of Review








A trial court=s ruling on a motion to suppress is
generally reviewed for an abuse of discretion.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex.Crim.App. 1996); Gordon v. State, 4 S.W.3d 32, 35 (Tex.App.--El
Paso 1999, no pet.).  In reviewing a
motion to suppress, we must give almost total deference to the trial court=s determination of historical facts and
review de novo mixed questions of law and fact that do not turn on an
evaluation of credibility and demeanor.  State
v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex.Crim.App. 1997).  As the trial
court made no explicit findings of historical facts in this case, the evidence
must be reviewed in a light most favorable to the trial court=s ruling.  Carmouche, 10 S.W.3d at 327-28.  The trial court=s
ruling will be upheld if it is correct on any theory of law applicable to the
case.  Willover v. State, 70
S.W.3d 841, 845 (Tex.Crim.App. 2002); Ross, 10 S.W.3d at 855-56.

Evidence
at Suppression Hearing

Two witnesses,
Officer Wagner and Cassandra Fontana, testified at the pretrial suppression
hearing in Appellant=s
case.  With respect to Appellant=s entry into the apartment, Officer
Wagner testified that the covert officers radioed that someone else was
approaching the room.  Appellant let
himself into the room with a key and was carrying several objects.  Officer Wagner instructed Appellant to place
what he was carrying down so the officers could pat him down.[3]  When he told Appellant to put his bag down,
Appellant dropped everything he was carrying. 
Officer Wagner recalled that Appellant had two bags, but they did not
strike him as a weapon.  When Appellant
dropped the bags, Officer Wagner heard a clanking sound and saw several glass
objects come out, which he recognized as drug paraphernalia.  Officer Wagner then arrested Appellant for possession
of drug paraphernalia and searched Appellant and the bag.  As a result of the search after arrest,
Officer Wagner recovered methamphetamine in the amount of four grams or more
but less than 200 grams.








On
cross-examination, Officer Wagner testified that Ms. Fontana had offered to
make phone calls to get somebody to come over and sell her an ounce and the
officers were attempting to arrange this while they searched the bedroom,
closet, kitchen, and bathroom for weapons. 
Officer Wagner recalled finding at least one gun during the search.  Officer Wagner clarified his testimony,
stating that when Appellant came to the door, Appellant put a key in the door,
turned the lock, and then entered the room. 
In Appellant=s right
hand, he had a cell phone and keys and in his left hand he had two bags, one of
which was a green bag.  As he moved
towards Appellant, Officer Wagner told Appellant to set the items down and
Appellant dropped them and stuck his hands above his head.  Officer Wagner observed that glass pipes had
popped out of the green bag and immediately handcuffed Appellant.  Officer Wagner then patted Appellant down and
did not find a weapon on him.








Defense witness
Cassandra Fontana recalled that she was in the restroom flushing drugs because
she knew the police were at the door. 
While in the bathroom, she heard them ask for her and offered her wrists
to the officers to be handcuffed when she exited.  The officers then searched the room, starting
with the bedroom where they found two guns. 
One of the officers asked her to make a phone call to see if she could
get somebody over there with some dope. 
At some point, a man named David knocked on the door.  The door was bolted and latched.  An officer opened the door, but the latch was
stuck.  He then removed the latch, opened
the door, and the officers then grabbed David by the arms and pulled him into
the room.  They then brought David into
the kitchen, ran his information, and let him go ten or fifteen minutes later
when his information came back clear. 
After David left, the officers bolted and latched the door again.  About twenty minutes later, Appellant knocked
on the door.  According to Ms. Fontana,
the officers went to the door in a panic rush. 
They opened the door, but the top part was still latched.  Ms. Fontana saw Appellant standing outside
before the officers quickly shut the door and unlatched it again.  Two of the three officers then dragged
Appellant into the room just as they had done to David.  Ms. Fontana observed that Appellant had a
black address book, his keys, and his cell phone.  Ms. Fontana stated that she never saw a green
bag in Appellant=s
hand.  Rather, that bag was already in
the room on the floor underneath the coffee table.  When Appellant=s
black bag fell on the floor in the same area where the green bag was, the
officers found the green bag.  Appellant
was patted down for weapons, but not placed under arrest at that point.  Ms. Fontana testified that the green bag and
its contents, including the dope, belonged to her.

At the conclusion
of the suppression hearing, the trial court denied Appellant=s motion to suppress and overruled the
same objections when Appellant re-urged them at trial.

Temporary
Investigative Detention








The Fourth
Amendment of the United States Constitution guarantees individuals the right to
be free from unreasonable seizures.  See
U.S. Const. Amend. IV; Brewer
v. State, 932 S.W.2d 161, 167 (Tex.App.--El Paso 1996, no pet.).  A stop of an individual by the police
violates this guarantee only if (1) the stop or detention constitutes a
seizure, and (2) the seizure is unreasonable. 
Id. at 167.  A seizure or
detention occurs if, in light of all the circumstances surrounding an encounter
between a police officer and an individual, the officer=s
conduct would communicate to a reasonable person that he is not free to go, or
not free to refuse the officer=s
requests.  Florida v. Bostick, 501
U.S. 429, 435, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); Brewer, 932
S.W.2d at 167.  A defendant is detained
if, from his or her perspective, there has been such a display of official
authority that a reasonable person would not have felt that he was free to
leave.  United States v. Mendenhall,
446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); Chambers v.
State, 866 S.W.2d 9, 19 (Tex.Crim.App. 1993), cert. denied, 511 U.S.
1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). 
A person has not been seized until he has yielded to a law enforcement
officer=s show of
authority or when officers physically limit his movement.  California v. Hodari D, 499 U.S. 621,
626-28, 111 S.Ct. 1547, 1550-51, 113 L.Ed.2d 690 (1991); Johnson v. State,
912 S.W.2d 227, 234 (Tex.Crim.App. 1995); Brewer, 932 S.W.2d at
167.  The State in its brief concedes, in
effect, that Appellant was seized, but argues that it was a legal seizure
grounded in reasonable, articulable facts.

A police officer
may be justified in stopping and briefly detaining a person for investigative
purposes even though the evidence falls short of probable cause for an
arrest.  See Terry v. Ohio, 392
U.S. 1, 21-24, 88 S.Ct. 1868, 1879-81, 20 L.Ed.2d 889 (1968); Davis v. State,
947 S.W.2d 240, 244 (Tex.Crim.App. 1997). 
To determine the reasonableness of an investigative detention, we apply
the test articulated in Terry v. Ohio: 
(1) whether the officer=s
action was justified at its inception; and (2) whether it was reasonably
related in scope to the circumstances that justified the initial
interference.  Terry, 392 U.S. at
19-20, 88 S.Ct. at 

1878-79; Davis, 947 S.W.2d
at 244.  The reasonableness of a
temporary detention must be examined based on the totality of the circumstances
and will be justified when the detaining officer has specific articulable
facts, which taken together with rational inferences from those facts, lead him
to conclude that the person detained actually is, has been, or soon will be
engaged in criminal activity.  Terry,
392 U.S. at 21, 88 S.Ct. at 1880; Woods v. State, 956 S.W.2d 33, 38
(Tex.Crim.App. 1997).  This is an
objective standard that considers whether the facts available to the officer at
the moment of the seizure or the search would warrant a person of reasonable
caution to believe that the action taken was appropriate.  Terry, 392 U.S. at 21-22, 88 S.Ct. at
1879-80.








Under Terry,
an officer may conduct a pat‑down search or frisk for weapons during an
investigative stop when the officer has reason to believe that the suspect
might be armed and dangerous, regardless of whether he has probable cause to
arrest the individual for a crime.  Terry,
392 U.S. at 27, 88 S.Ct. at 1883.  The
officer need not be certain that the suspect is armed; Athe
issue is whether a reasonably prudent man in the circumstances would be
warranted in the belief that his safety or that of others was in danger.@ 
Id.

In this case,
Dallas police officers were in Ms. Fontana=s
apartment for the purpose of executing felony arrest warrants for Cassandra
Fontana.  In the course of executing the
arrest warrants, Officers Wagner and Eggleston conducted a search of the
premises.  During that search, officers
recovered at least one gun, while Ms. Fontana testified that they had found two
guns prior to Appellant=s
entry.  The officers, with Ms. Fontana=s assistance, were also involved in
trying to arrange a drug transaction at the apartment for that night.  While officers were conducting the search and
arranging the drug buy, two individuals knocked on the door and entered the
apartment.  The two individuals along
with witness Rebecca Decla remained in the apartment while Officer Eggleston
left to check their identification for outstanding warrants.  Soon after, Appellant let himself into the
apartment with a key.








At the moment of
the stop, Officer Wagner would have known the following information: that
weapons had already been recovered from the apartment while their search
continued; several witnesses were on the premises, creating a concern for their
safety; the apartment was a probable location for drug transactions; and
officer safety was at issue given only two officers were in the apartment at
the time of Appellant=s
entry.  While Officer Wagner did not
think Appellant=s bags
were weapons, he testified that he instructed Appellant to place what he was
carrying down so the officers could pat him down.  From the relevant facts and rational
inferences, Officer Wagner could conclude that Appellant was soon to be
involved in criminal activity and that he might be armed and dangerous.  Under these circumstances, Officer Wagner was
justified in temporarily detaining Appellant for investigative purposes.  








Contrary to
Appellant=s
argument on appeal, the evidence does not support his contention that he was
placed under arrest, rather than temporarily detained when Officer Wagner
instructed Appellant to place what he was carrying down.  Both arrests and investigative detentions are
types of seizures, each involving varying degrees of restraint on an individual=s liberty.  See Dean v. State, 938 S.W.2d
764, 768-69 (Tex.App.‑-Houston [14th Dist.] 1997, no pet.).  The Texas Code of Criminal Procedure provides
that a person is under arrest Awhen
he has been actually placed under restraint or taken into custody by an officer
or person executing a warrant of arrest, or by an officer or person arresting
without a warrant.@  Tex.Code
Crim.Proc.Ann. art. 15.22 (Vernon 1977); see also Amores v. State,
816 S.W.2d 407, 411 (Tex.Crim.App. 1991)(an arrest occurs when a person=s liberty of movement is restricted or
restrained).  In the context of search
and seizure, A[a]n
arrest requires either physical force or, where that is absent, submission to
the assertion of authority.@  [Emphasis omitted].  Hodari D, 499 U.S. at 627, 111 S.Ct.
at 1551.  Arrests constitute the highest
restriction on individual liberty and are accompanied by circumstances that
would indicate to a reasonable person that the individual has been actually
restricted or restrained.  Dean,
938 S.W.2d at 768-69, citing, Hoag v. State, 728 S.W.2d 375, 379
(Tex.Crim.App. 1987).   The initial stop
of Appellant by instructing him to set down what he was carrying would not have
indicated to a reasonable person that he had been actually restricted or
restrained by Officer Wagner.  As
discussed above, the seizure of Appellant constituted a legal temporary
detention for investigative purposes.  We
overrule Issue One.

Jury
Instruction

In Issue Two,
Appellant argues that the trial court erred in denying his requested jury
instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure
because he contradicted and disputed the facts surrounding his detention and
arrest.  Specifically, Appellant points
to Ms. Fontana=s
testimony, in which she stated that officers unlatched the door from within,
opened the door, and grabbed or dragged Appellant into the room.  Appellant asserts that this testimony alone
was sufficient to create a factual dispute as to the legality of  the detention.  From this testimony, Appellant contends, the
jury could have concluded that the search and subsequent seizure of contraband
were Atainted
fruit@ of his
illegal detention and therefore inadmissible evidence under Article 38.23.

Standard
of Review

When an appellant
alleges jury charge error on appeal, our first task is to determine whether
error actually exists in the charge.  Hutch.
v. State, 922 S.W.2d 166, 170 (Tex.Crim.App. 1996); Almanza v. State,
686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(Opin. on reh=g).  If there is jury charge error, we then must
determine if the error caused sufficient harm to warrant reversal.  Hutch, 922 S.W.2d at 170-71; Almanza,
686 S.W.2d at 171.  Where the defendant
timely objected at trial to the jury charge, as in this case, we must reverse
if the error is not harmless.  Hutch,
922 S.W.2d at 171; Almanza, 686 S.W.2d at 171.

Article
38.23 Jury Instruction

Article 38.23(a)
of the Texas Code of Criminal Procedure provides:








No evidence obtained
by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of Americas, shall be admitted in evidence against the
accused on the trial of any criminal case.

In any case where the
legal evidence raises an issue hereunder, the jury shall be instructed that if
it believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.

 

Tex.Code
Crim.Proc.Ann. art. 38.23(a)(Vernon Supp. 2004).

 

An Article 38.23
instruction directs a jury to disregard evidence if it resolves, in a defendant=s favor, a factual dispute concerning
the manner in which the evidence was obtained. 
Balentine v. State, 71 S.W.3d 763, 773 (Tex.Crim.App. 2002); Thomas
v. State, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986).  If a defendant successfully raises a factual
dispute over whether evidence was illegally obtained, inclusion of a properly
worded Article 38.23 instruction is mandatory.  Bell v. State, 938 S.W.2d 35, 48
(Tex.Crim.App. 1996).








To determine
whether Appellant was entitled to an Article 38.23 instruction, we must
consider whether the evidence at trial raised a factual dispute as to how the
evidence was obtained.[4]  Officer Wagner testified at trial that he
gave Appellant a verbal command to put down what he was holding and put his
hands above his head.  Appellant then
dropped the bags and Officer Wagner saw glass pipes and vials fall out of the
green bag.  Ms. Fontana testified that
Appellant knocked on the door and was grabbed by officers and pulled into the
room.  When the officers put their hands
on him, Appellant dropped everything he had on the floor, which according to
her, did not include the green bag. 
Rather, Ms. Fontana testified that the green bag and its contents were
hers, not Appellant=s.  According to Ms. Fontana=s testimony, the challenged evidence
was not obtained as a result of Appellant=s
alleged illegal seizure.  Because Appellant
did not raise a factual dispute as to how the evidence was obtained, the trial
court did not err in refusing Appellant=s
requested jury instruction.  Issue Two is
overruled.

We affirm the
trial court=s
judgment.

 

 

March 4, 2004

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In the record, witnesses referred to Ms. Fontana=s
residence as either an apartment, hotel room, or room in their description of
events.  For the sake of consistency,
throughout this opinion we will refer to her residence as an apartment, rather
than a hotel room since Ms. Fontana testified that she had been living there
for some weeks.





[2]
Officers Milligan and Wagner conceded on cross-examination that they attempted
to broker a deal to buy drugs in the course of executing the arrest warrant for
Ms. Fontana.   According to Officer
Milligan, the two males arrived while Ms. Fontana was trying to contact someone
to come over with some dope, who told her he did not have any or was not going
to bring any.  





[3]
At trial, Officer Wagner testified that he gave Appellant a verbal command to
put down what he was holding and put his hands above his head.  





[4]
Appellant requested the following instruction, which defense counsel read into
the record:

You are instructed that under our law,
no evidence obtained or derived by an officer or other person as an [sic]
result of an unlawful detention shall be admissible in evidence against such
accused.

An officer is
permitted to make a temporary investigative detention of a person if the
officer has specific articulable facts, which, comma, taken together with
rational inferences from those facts leads him to conclude that the person
actually detained has been or soon will be engaged in criminal activity,
period. 

Now, comma, bearing in mind if you find from
the evidence that on the occasion in question, the defendant, Randall Gene
Skipworth, appeared at the door, 3018--Apartment 3018 and was immediately
detained by the officers herein or you have a reasonable doubt thereof that
such detention would be illegal, and if you find from the facts so to be, or if
you have a reasonable doubt thereof, you will disregard this testimony.  The officers relative to their detention of
defendant and the conclusions drawn as a result thereof, you will not consider
such evidence for any purpose whatsoever.