COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

KENNETH FRANTZ DAVIDSON,                   )
) No. 08-03-00034-CR
                                    Appellant,                        )
) Appeal from the
v.                                                                          )
) County Criminal Court #11
THE STATE OF TEXAS,                                   )
) of Dallas County, Texas
                                    Appellee.                          )
) (TC# MB01-08728-N)
)


O P I N I O N

            Appellant Kenneth Frantz Davidson appeals his conviction for the misdemeanor offense
of telephone harassment. Over Appellant’s plea of not guilty, the jury found Appellant guilty of
the offense and the trial court assessed punishment at 180 days confinement in the county jail and
a fine of $600, probated to 24 months community supervision. In five issues, Appellant
challenges the legal and factual sufficiency of the evidence to sustain the conviction, challenges
the legal sufficiency of the jury’s rejection of his defensive theory of necessity, argues that the
trial court erred in not granting his Batson challenge, and asserts improper jury argument by the
State. We affirm.
            On June 27, 2001, Detective William Ellstrom of the Garland Police Department met
with complainant Carol Ann Pendley and took her sworn statement, her report of telephone
harassment against Appellant. Ms. Pendley testified that on June 15, 2001, she, her now
deceased adult son Steven, her grandson, her daughter-in-law, and her close friend Phil, were in
East Texas at a Boy Scout campout. Ms. Pendley was away for the entire day, returning home to
Garland sometime after midnight on June 16, 2001. When she walked into her home, she
glanced at the telephone answering machine and saw that it was blinking. Ms. Pendley played
the messages and was shocked and set back by what she heard. Appellant, her ex-husband, had
called a number of times and left messages on her machine, which she characterized as
shocking.


 The messages made her extremely nervous, very frightened, and stirred many
memories of long ago. Ms. Pendley and Appellant have been divorced since 1966. The last time
she had any communication with Appellant was in October 2000.
            Ms. Pendley identified State’s Exhibit #1 as the tape from her answering machine. She
stated that the tape reflects a number of calls placed to her home that day by Appellant. She
recalled that Appellant identified himself as the caller and that she found the messages
threatening and scary, with some sexual content to them. The tape was played to the jury. After
the tape was played, Ms. Pendley told the jury that the messages made her feel terrified, that they
hurt her, and made her feel like she “had been raped or something.” Ms. Pendley did not
understand why Appellant had called her because she has not been married to him since the ‘60s,
has never called and bothered him, and if Appellant had differences with their son Steven, he was
forty-two years old and not a minor child. On the day the messages were made, Ms. Pendley was
with Steven all day and he did not make any calls from either his wife’s cell phone or
Ms. Pendley’s cell phone. To her knowledge, her friend Phil did not use a phone to call
Appellant either. 
            Ms. Pendley testified that her caller ID showed Appellant made eight calls on June 15,
2001: at 4:38 p.m.; at 4:42 p.m.; at 6:12 p.m.; at 6:38 p.m.; at 6:55 p.m.; at 7:07 p.m.; at 7:13
p.m.; and at 11:19 p.m. There were also three hang-ups on the tape, which she knew were
Appellant because they had the same name and numbers on her caller ID as when he left
messages on the answering machine. Ms. Pendley stated that the messages was annoying,
extremely threatening, extremely harassing, and extremely alarming to her. She also considered
the messages very abusive, tormenting, and “just plain scary.”
            On cross-examination, Ms. Pendley admitted that when her son Steven was alive, she was
concerned that he might try to harm himself or others. She explained that Steven had suffered
from cirrhosis of the liver for almost eight years, and at one point was on a liver transplant list. 
As a liver patient, Steven suffered from encephalopathy, that is, confusion of the mind due to
toxic and elevated levels of ammonia in the body. In this condition, patients are totally out of
touch and usually require hospitalization for stabilization. Steven was also diagnosed as manic
depressant. Ms. Pendley was aware that her son had blocked his telephone number from
receiving calls from Appellant.
            Appellant testified in his defense. He admitted that he left the messages on the tape. 
However, he stated that the reason he called Ms. Pendley was because Steven had threatened his
life again and Appellant felt that their son was out of control. Appellant wanted to talk to her to
find out what they could do. Appellant did not contact Steven directly because they were
estranged after the doctor turned down Appellant’s offer to donate half of his liver for a liver
transplant. Appellant had no other way of contacting his son other than to call his ex-wife and he
believed he was in eminent danger from his son. He believed Ms. Pendley would have influence
over his son. Appellant knew that Steven owned weapons. Appellant did not call the police
because he did not want to involve his son with the police and did not want him put into the
justice system.
            Appellant introduced into evidence a tape containing messages from his answering
machine. The tape was played to the jury. Appellant testified that he recognized the voice in the
messages as that of his now deceased son. The messages were left about a day before he called
Ms. Pendley.
            On cross-examination, Appellant stated that when he made the calls to Ms. Pendley it was
not his intent to harass, annoy, alarm, abuse, torment, or embarrass her. Rather than call the
police to intervene or protect him from his son, Appellant left messages on Ms. Pendley’s
answering machine. Appellant stated that he did not want his son to get into any legal trouble,
but admitted that in the messages he said he had the upper hand and he could call the D.A.’s
office and have his son charged with a felony. Appellant also implied in the messages that his
son would be raped by prisoners.
            Appellant knew that he was blocked from calling his son, but he called his ex-wife
because she had been able to intervene when their son had threatened him back in 1981. 
Appellant pointed out that in his last phone call he stated, “I won’t call you again tonight it’s too
late. We need to talk about this and get it settled.” Appellant admitted that he used all kinds of
vulgarity in the messages, but he had been drinking heavily. Appellant agreed that the “gist” of
the messages was that they needed to talk about their son, that there might be bloodshed, and that
he was not afraid to die. Appellant denied having the intent to upset Ms. Pendley by all the other
extraneous messages. In making the calls, Appellant was most concerned about his grandson
because if Steven killed or hurt him, Steven would be put in jail and that would be very upsetting
to Appellant’s grandson. Appellant thought Ms. Pendley was ignoring him because she would
not respond to any of his calls. Appellant testified that it was not his intent to annoy her; he just
wanted to talk to her. Appellant agreed that there were insulting remarks on the tape, but it was
not his intent to insult her, but rather to “get her in motion.”
            In Issues One and Two, Appellant challenges the legal sufficiency of the evidence to
sustain his conviction. Specifically, Appellant contends the State failed to prove that Appellant
had the intent to harass the complainant, that his necessity defense was legally sufficient, and that
the State failed to prove that the complainant’s telephone “rang repeatedly” as charged in the
information.
Standard of Review
            In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Lacour v. State, 8 S.W.3d 670, 671
(Tex.Crim.App. 2000); Hernandez v. State, 946 S.W.2d 108, 110-11 (Tex.App.--El Paso 1997,
no pet.). We measure the legal sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses, as this was the function of the trier of fact. See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991); Lucero v. State, 915 S.W.2d 612, 614 (Tex.App.--El Paso 1996, pet.
ref’d). Instead, our duty is to determine whether if both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to
the verdict. See Adelman, 828 S.W.2d at 421-22. In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Telephone Harassment
            To support a conviction for the offense of telephone harassment under Tex.Pen.Code
Ann. § 42.07(a)(4), the State must prove beyond a reasonable doubt that Appellant had the intent
to harass, annoy, alarm, abuse, torment, or embarrass the complainant when he: (1) caused the
telephone of the complainant to ring repeatedly; or (2) made repeated telephone communications
in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend
another. See Tex.Pen.Code Ann. § 42.07(a)(4)(Vernon 2003); Blount v. State, 961 S.W.2d 282,
283-84 (Tex.App.--Houston [1st. Dist.] 1997, pet. ref’d). A person acts intentionally, or with
intent, with respect to the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. Tex.Pen.Code Ann.
§ 6.03(a)(Vernon 2003). A defendant’s intent may be determined from his words, actions, and
conduct. Blount, 961 S.W.2d at 284. 
            Appellant contends that there is legally insufficient evidence that his intent in making the
communications was to harass Ms. Pendley. Appellant points to evidence that his intent was to
have Ms. Pendley intervene and defuse the deadly situation with their son. Further, Appellant
denied that his intent was to upset Ms. Pendley, but rather, he stated that his intent was to “get
her in motion.”


 While Appellant may have wanted Ms. Pendley to call him back to resolve a
pending family crisis, the evidence shows that in so desiring, he made numerous telephone calls
to Ms. Pendley that contained vulgar language and words indicating that he would have their son
charged with a felony. These words were contrary to Appellant’s testimony in which he stated
his desire to avoid involving the police in the matter. Appellant thought Ms. Pendley was
ignoring him by not responding to his calls. Ms. Pendley, on the other hand, testified that
Appellant’s messages left her feeling terrified and that they were annoying, extremely
threatening, extremely harassing, and extremely alarming to her. She also found the messages to
be very abusive, tormenting, and “just plain scary.” Based on Ms. Pendley’s testimony regarding
the content of the messages, the jury could have reasonably inferred beyond a reasonable doubt
Appellant’s intent to harass Ms. Pendley by making repeated telephone communications in a
manner reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass her. We overrule
this portion of Appellant’s complaint in Issue One.
Defense of Necessity
            Within his first issue, Appellant also asserts that there was legally sufficient evidence of
his necessity defense, therefore he should have been found not guilty as a matter of law. We
understand Appellant to be challenging the legal sufficiency of the evidence to defeat his
necessity defense.
            When a defendant challenges the legal sufficiency of the evidence supporting the jury’s
implicit rejection of a justification defense, we review all the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact would have found the essential
elements of the offense beyond a reasonable doubt and also would have found against the
defendant on the defensive issue beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910,
914 (Tex.Crim.App. 1991). In this case, the trial court instructed the jury on the defense of
necessity. The jury’s verdict of guilty is an implicit finding rejecting the Appellant’s defensive
theory. See id. Assuming, without deciding, that the evidence raised the defense of necessity, we
will apply the legal sufficiency standard of review under Saxton to the defense.



            Conduct that would otherwise be criminal is justified by “necessity” if: (1) the actor
reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the
desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards
of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a
legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly
appear. Tex.Pen.Code Ann. § 9.22 (Vernon 2003). 
            Under the first element, “imminent harm” means something that is on the point of
happening, not about to happen. Jackson v. State, 50 S.W.3d 579, 595 (Tex.App.--Fort Worth
2001, pet. ref’d). An “imminent harms” occurs when there is an emergency situation, and it is
“immediately necessary” to avoid that harm. Id. That is, a split-second decision is required
without time to consider the law. Id. Further, a generalized fear of harm does not constitute a
reasonable belief that conduct is “immediately necessary to avoid imminent harm.” Brazelton v.
State, 947 S.W.2d 644, 648 (Tex.App.--Fort Worth 1997, no pet.); see also Chunn v. State, 821
S.W.2d 718, 719-20 (Tex.App.--Houston [1st Dist.] 1991, pet. ref’d), cert. denied, 506 U.S. 870,
113 S.Ct. 203, 121 L.Ed.2d 144 (1992). 
            Appellant claims that he reasonably believed that making the calls to Ms. Pendley was
immediately necessary to avoid their son murdering him. Appellant directs our attention to the
contents of the calls he received from his son. Appellant argues that he was attempting to defuse
their son’s threats. The record does not contain the content of these calls, but Appellant did
testify that his son left messages on his answering machine about a day before he called
Ms. Pendley. Appellant also testified that his son owned weapons. Ms. Pendley stated that when
her son was alive, she was concerned that he might try to harm himself or others. However,
Appellant told Ms. Pendley he could contact the authorities to have their son charged with a
felony and implied their son would be imprisoned. From Appellant’s testimony, it appears that
he wanted Ms. Pendley’s assistance in resolving the dispute, but waited a day before seeking any
intervention. There is no evidence to show Appellant’s conduct was immediately necessary to
avoid the imminent harm that Appellant claims existed. 
            After reviewing evidence in the record in a light most favorable to the verdict, we
conclude that any rational trier of fact would have found the essential elements of the offense
beyond a reasonable doubt and also would have found against Appellant on the necessity defense
issue beyond a reasonable doubt. See Saxton, 804 S.W.2d at 914. Therefore, we hold that the
evidence is legally sufficient to show the essential elements of the offense beyond a reasonable
doubt and legally sufficient to disprove Appellant’s necessity defense beyond a reasonable doubt. 
Issue One is overruled in its entirety. 
“Ring Repeatedly” Allegation in the Information
            In Issue Two, Appellant further contends that the evidence was legally insufficient
because the State did not prove that the complainant’s phone “rang repeatedly” as alleged in the
State’s information. The State argues that it only had to prove one of the manner and means of
committing the offense. We agree. 
            It is proper for a charging instrument to allege different ways of committing a single
offense in the conjunctive, but to have the jury charged in the disjunctive. See Kitchens v. State,
823 S.W.2d 256, 258 (Tex.Crim.App. 1991), cert. denied, 504 U.S. 958, 112 S.Ct. 2309, 119
L.Ed.2d 230 (1992). Where alternative theories of committing the same offense are submitted to
the jury in the disjunctive, it is appropriate for the jury to return a general verdict if the evidence
is sufficient to support a finding under any of the theories submitted. Id. 
            Here, the information filed against Appellant set out two alternative manner and means
for committing the offense under Texas Penal Code Section 42.07(a)(4) in the conjunctive, but
the court’s charge to the jury stated the different ways of commission of the offense in the
disjunctive.


 The jury returned a general verdict. As discussed above, the evidence was legally
sufficient to prove the State’s alternative theory-- that Appellant with the intent to harass, annoy,
alarm, abuse, torment, or embarrass Ms. Pendley made repeated telephone communications to
her in a manner reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass her. 
Issue Two is overruled.
            In Issue Three, Appellant argues that the evidence was factually insufficient to prove
Appellant’s intent in making the calls was to harass the complainant. Appellant points to the
same evidence addressed in reviewing his legal insufficiency claim. Specifically, Appellant
asserts that he denied that his intent to annoy her, he just wanted to talk to her, to “get her in
motion,” and to have her call him back.
Standard of Review
            In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004); see
also Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). There are two ways in which
we may find the evidence to be factually insufficient. Zuniga, 144 S.W.3d at 484. Evidence is
factually insufficient when the evidence supporting the verdict, considered alone, is too weak to
support the finding of guilt beyond a reasonable doubt. Zuniga, 144 S.W.3d at484. Evidence is
also insufficient when contrary evidence is so strong that the beyond-a-reasonable doubt standard
could not have been met. Id. at 484-85. However, in our factual sufficiency review, we must
give appropriate deference to the jury and should not intrude upon its role as the sole judge of the
weight and credibility given to evidence presented at trial. See Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis, 922 S.W.2d at 133. Accordingly, we are authorized to set aside
the jury’s finding of facts only in instances where it is manifestly unjust, shocks the conscience,
or clearly demonstrates bias. Clewis, 922 S.W.2d at 135. If the evidence is factually insufficient,
then we must reverse the judgment and remand for a new trial. Id.
Appellant’s Intent
            Appellant offered contrary evidence with regard to his intent in making repeated
telephone communications to Ms. Pendley on the day in question. The jury, however, in
determining the credibility of a witness may “believe all, some, or none of the testimony.” 
Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Appellant also argues that his
motivation for calling Ms. Pendley for intervention is supported by evidence that she was with
their son for the entire day, knew about his illness, and could explain a facet of their son’s
medical condition in layman terms. A decision is not manifestly unjust merely because the fact
finder resolved conflicting views of evidence in favor of the State. Cain v. State, 958 S.W.2d
404, 410 (Tex.Crim.App. 1997). Viewing the evidence in a neutral light, we conclude that the
evidence of guilt, considered alone, is not too weak to support the guilty finding beyond a
reasonable doubt nor is the contrary evidence strong enough that the beyond-a-reasonable doubt
standard was not met. Therefore, we find that the evidence is factually sufficient to sustain
Appellant’s conviction. See Zuniga, 144 S.W.3d at 484. Issue Three is overruled.
            In his fourth issue, Appellant contends the trial court erred in not granting his Batson
challenge because the State prosecutor failed to provide race-neutral explanation for its three
peremptory strikes. See Batson v. Kentucky, 476 U.S. 79, 88-89, 106 S.Ct. 1712, 1718-19, 90
L.Ed.2d 69 (1986). 
            In reviewing a Batson challenge, we apply the clearly erroneous standard. Emerson v.
State, 851 S.W.2d 269, 273 (Tex.Crim.App. 1993); Hill v. State, 827 S.W.2d 860, 865
(Tex.Crim.App. 1992), cert. denied, 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992);
Brewer v. State, 932 S.W.2d 161, 164 (Tex.App.--El Paso 1996, no pet.). A ruling is clearly
erroneous when, after searching the record, we are left with a definite and firm conviction that a
mistake has been committed. Yarborough v. State, 947 S.W.2d 892, 908 (Tex.Crim.App. 1997);
Hill, 827 S.W.2d at 865. We examine the record in the light most favorable to the trial court’s
ruling. See Williams v. State, 804 S.W.2d 95, 101 (Tex.Crim.App. 1991), cert. denied, 501 U.S.
1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); Brewer, 932 S.W.2d at 164.
            A Batson analysis involves a three-step process to prove race discrimination in the
exercise of a peremptory challenge. First, the defendant must make a prima facie showing by
raising an inference of purposeful discrimination on the part of the prosecuting attorney. Batson,
476 U.S. at 96, 106 S.Ct. at 1723; Brewer, 932 S.W.2d at 164. Once the accused establishes a
prima facie case of racially motivated strikes, the burden of production shifts to the State to
provide a race-neutral explanation. Emerson, 851 S.W.2d at 271-72; Brewer, 932 S.W.2d at 164. 
In this context, a race-neutral explanation means one based on something other than the race of
the juror. Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395
(1991). The explanation must relate to the particular case to be tried, but need not rise to the
level justifying exercise of a challenge for cause. Batson, 476 U.S. at 97, 106 S.Ct. at 1723;
Brewer, 932 S.W.2d at 164. The prosecutor’s explanation need not be persuasive or even
plausible. Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834
(1995); Brewer, 932 S.W.2d at 164. The issue under this prong is the facial validity of the
prosecutor’s explanation. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771; Brewer, 932 S.W.2d at
164. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered
will be deemed race-neutral. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771; Brewer, 932 S.W.2d at
164. 
            Third, if the State provides a race-neutral explanation for its strikes, the defendant must
go forward with his burden of showing that the reasons given by the State are a sham or a pretext. 
See Williams, 804 S.W.2d at 101; Keeton v. State, 749 S.W.2d 861, 868 (Tex.Crim.App. 1988);
Brewer, 932 S.W.2d at 164. The defendant must do more than simply state his disagreement
with some of the State’s explanations; he must prove affirmatively that the State’s race-neutral
explanations were a sham or pretext. Johnson v. State, 959 S.W.2d 284, 290 (Tex.App.--Dallas
1997, pet. ref’d); Brewer, 932 S.W.2d at 164. The defendant has the ultimate burden of
persuasion on its allegation of racial motivation for peremptory strikes. See Purkett, 514 U.S. at
768, 115 S.Ct. at 1771.
            In this case, Appellant objected to the State’s use of peremptory strikes on three
venirepersons: Mr. Gonzales (Juror No. 2); Mr. Sanchez (Juror No. 10); and Mr. Hunt (Juror
No. 12). The trial court denied Appellant’s Batson motion after the prosecutor provided his
reasons for striking the potential jurors. The record reflects that Mr. Gonzales and Mr. Sanchez
are Hispanic and Mr. Hunt is African-American and that the State struck all of the minority
members of the jury panel in the strike zone. When, as in this case, the State offers an
explanation for the strikes and the trial court makes its ruling, the issue of whether the defendant
presented a prima facie case is moot. Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866. The
central issue becomes the facial validity of the prosecutor’s explanation for the challenged
strikes. See Purkett, 514 U.S. at 768, 115 S.Ct. at 1771. 
The State’s Peremptory Strikes
            Appellant complains on appeal that the prosecutor failed to provide race-neutral
explanations for the strikes, and instead, merely provided description of the panel members or of
their answers. The prosecutor gave the following reason for striking potential juror,
Mr. Gonzales:
            The State:       Your honor, as far as Juror 2 is concerned, Mr. Gonzales, the reason the
State chose to strike him there was -- were a few reasons. First of all, I
recall him saying that despite having good relations with his former spouse
now, shortly after the divorce, there were bad feelings for a while. And
secondly, I do remember him engaging in somewhat of a long dialogue
with Defense counsel on how a parent is always a parent or one’s kids are
always their kids even after they move out and it just struck the State as
such that perhaps Mr. Gonzales wouldn’t make a favorable or fair juror.

The State gave the following explanation for its second peremptory strike, Mr. Sanchez:
The State:As far as Panel Member No. 10, Mr. Sanchez is concerned
he has a conviction I believe out of this county for driving
while intoxicated. We chose not to bring him onto the jury
for that reason.

With respect to its third peremptory strike, Mr. Hunt, the State gave the following explanation: 
The State:And as far as Mr. Hunt is concerned, we chose to strike him
first of all because he struck me in particular as being
someone disinterested. In addition, I have a personal bias
against men who wear earrings.

In response to the State’s explanations, Appellant’s counsel argued that:
Defense:[N]one of those reasons that the State has put forth really
seem to have any substance in the sense that the State did
not attempt to cross-examine either Mr. Gonzalez or Mr.
Sanchez on those particular issues. And in terms of Mr.
Hunt being disqualified for an earring, I would say that
that’s hardly a basis.




            On appeal, Appellant argues that the prosecutor’s explanation for striking Mr. Gonzales 
was descriptive of Appellant’s examination of Mr. Gonzales, but “did not explain how these
descriptive details provided a race-neutral basis for his strike.” On the contrary, we find that the
prosecutor gave a clear and reasonably specific explanation that was race-neutral. The
prosecutor’s explanation for why he believed Mr. Gonzales would not be a fair juror was related
to this particular case, which concerned family relations involving a divorce and an adult child. 
Thus, the burden shifted back to Appellant to rebut the State’s explanation by showing the
explanations were a sham or pretext. See Keeton, 749 S.W.2d at 868; Brewer, 932 S.W.2d at
164. In rebuttal, Appellant merely disagreed with the State’s explanation and did not offer any
argument or evidence to dispute the facial validity of the State’s race-neutral explanation. We
conclude that Appellant failed to meet his burden of proving purposeful discrimination with
respect to potential juror Mr. Gonzales.
            Appellant also challenges the prosecutor’s explanation for striking potential juror Mr.
Sanchez. Appellant claims that the prosecutor “labeled Mr. Sanchez as being someone convicted
of a non-moral turpitude offense” and gave a superficial explanation without any substantial
rationale. We disagree. The prosecutor explained that Mr. Sanchez was stricken because he had
a conviction for driving while intoxicated. A potential juror’s prior criminal history is a
legitimate race-neutral reason for a peremptory strike. See Bolden v. State, 923 S.W.2d 730, 734
(Tex.App.--Tyler 1996, no pet.)(a venire member’s prior criminal conviction is a race-neutral
reason for exercising a peremptory strike); Anderson v. State, 758 S.W.2d 676, 680 (Tex.App.--Fort Worth 1988, pet. ref’d)(peremptory challenge based on venire member’s previous legal
trouble is race-neutral explanation). We conclude that the prosecutor provided a racially neutral
and legitimate reason to exercise a peremptory strike against potential juror Mr. Sanchez. As
with his challenge to the State’s peremptory strike of Mr. Gonzales, Appellant did not offer
rebuttal sufficient to prove affirmatively that the prosecutor’s race-neutral explanation was a
sham or pretext.
            Finally, Appellant challenges the peremptory strike of potential juror Mr. Hunt. The
prosecutor stated that he struck Mr. Hunt because he seemed disinterested and because he wore
earrings. A potential juror’s demeanor during voir dire, including an apparent disinterest, is a
race-neutral reason for exercising a peremptory challenge. See Yarborough, 947 S.W.2d at 896
(prosecutor’s undisputed statement about a potential juror’s demeanor that is accepted by the trial
court is sufficient to support a peremptory challenge); see also Moss v. State, 877 S.W.2d 895,
898 (Tex.App.--Waco 1994, no pet.)(lack of attention and appearing disinterested is a 
race-neutral reason for striking a panelist). Further, striking a juror because of his appearance or
attire is a race-neutral reason. See Purkett, 514 U.S. at 769, 115 S.Ct. at 1771 (striking juror
based on appearance, including having unkempt hair, a mustache, and beard was race-neutral
explanation); see also Lee v. State, 949 S.W.2d 848, 850 (Tex.App.--Austin 1997, pet. ref’d)
(striking male juror for wearing earrings was a race-neutral explanation); Bryant v. State, 923
S.W.2d 199, 209 (Tex.App.--Waco 1996), pet. ref’d by, 940 S.W.2d 663 (Tex.Crim.App. 1997)
(male juror with earrings in each ear). Appellant offered no real rebuttal to the State’s 
race-neutral explanations for striking Mr. Hunt. Rather, defense counsel merely proffered his
disagreement with the prosecutor’s reasons, stating “[a]nd in terms of Mr. Hunt being
disqualified for an earring, I would say that that’s hardly a basis.”
            After examining the record in a light most favorable to the trial court’s ruling, we find
there is no evidence of disparate treatment among the venire members and that Appellant failed
to show that the State engaged in purposeful discrimination through the exercise of its
peremptory challenges. Therefore, we conclude the trial court’s ruling denying Appellant’s
Batson challenge was not clearly erroneous. Issue Four is overruled.
            In Issue Five, Appellant contends that the prosecutor’s comment during final argument,
which improperly struck at the defendant over the shoulders of defense counsel, constitutes
reversible error.
Preservation of Error
            Proper jury argument falls within one of four categories: (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to the arguments of opposing counsel;
and (4) a plea for law enforcement. Coleman v. State, 881 S.W.2d 344, 358 (Tex.Crim.App.
1994). The State is not permitted to strike at the defendant over defense counsel’s shoulders or
to accuse defense counsel of bad faith and insincerity. Wilson v. State, 938 S.W.2d 57, 59-60
(Tex.Crim.App. 1996), abrogated on other grounds by Motilla v. State, 78 S.W.3d 352
(Tex.Crim.App. 2002). In the prosecutor’s closing argument, the following exchange occurred: 
The State:Now in your jury charge on the last page you will have the
option of finding the Defendant guilty or not guilty. When
you review the evidence -- and part of that evidence is the
demeanor of Ms. Pendley, the complaining witness, and
how she trembled on that witness stand when she was
talking about what this man did, keep it all in mind. Keep
it all in focus. And if, in fact, you believe Ms. Pendley’s
fear to be truthful, in fact, if what you believe what you
heard right here to be true and you can see through the lies
proffered by the Defense --
 
Defense:Objection, Your Honor, striking at the Defendant over the
Defense attorney.
 
The Court:Sustained.
 
The State:Find him guilty. 

Appellant did not request that the jury be instructed to disregard the statement and did not move
for a mistrial.
            On appeal, we understand Appellant to be arguing that the prosecutor’s argument was so
prejudicial that an instruction to disregard would not have cured the harm. The State contends
that Appellant failure to make a motion for the jury to be instructed to disregard the prosecutor’s
comment waives any error. We must agree. 
            To preserve error for improper jury argument, a party must object to the argument,
request an instruction to disregard, and then move for a mistrial. Mathis v. State, 67 S.W.3d 918,
926-27 (Tex.Crim.App. 2002); Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996); see
Tex.R.App.P. 33.1. Before a defendant will be permitted to complain on appeal about an
erroneous jury argument or that an instruction to disregard could not have cured an erroneous
jury argument, he will have to show he objected and pursued his objection to an adverse ruling. 
Valencia v. State, 946 S.W.2d 81, 82-3 (Tex.Crim.App. 1997)(Op. on reh’g); Cockrell, 933
S.W.2d at 89. Appellant’s failure to pursue to an adverse ruling on his objection to a jury
argument forfeits his right to complain about the argument on appeal. See Cockrell, 933 S.W.2d
at 89. Issue Five is overruled.
            Having overruled all of Appellant’s issues for review, we affirm the trial court’s
judgment.

 
January 19, 2005                                            DAVID WELLINGTON CHEW, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)